**Eddie J. MILLER, Plaintiff,**

**v.**

**James E. MALLOY, Commissioner of Motor Vehicles, Vermont, Defendant.**

**Civ. A. No. 6530.**

United States District Court,
D. Vermont.

May 22, 1972.

---

Richard A. Axelrod, Vermont Legal Aid, Inc., St. Johnsbury, Vt., for plaintiff.

H. Russell Morss, Jr., Asst. Atty. Gen., Montpelier, Vt., for defendant.

Before WATERMAN and OAKES, Circuit Judges and HOLDEN, District Judge.

OAKES, Circuit Judge.

This action is brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) to enjoin, principally on equal protection

grounds, the defendant Commissioner of Motor Vehicles from enforcing 23 V.S.A. § 801(a) (1) (D),[1] which requires a person convicted of operating, taking, using or removing a motor vehicle without the owner's consent to furnish proof of financial responsibility as a condition precedent to obtaining or retaining a valid operator's license.[2] For the reasons set forth below, we find the statutory scheme constitutional and deny the requested relief.

The facts can be stated briefly. On March 22, 1968, plaintiff pleaded guilty to operating a motor vehicle without the owner's consent in violation of 23 V.S.A. § 1091. Plaintiff may not have been behind the wheel of the involved stolen automobile, but he was convicted as a principal because of his participation in the theft. In October, 1969, plaintiff wrote the Vermont Department of Motor Vehicles to inquire how he could procure an operator's license; this was his first application for a license in any state. He was told that he would have to post proof of financial responsibility before a license would be issued to him. A similar inquiry in December, 1971, met with the same reply.

While the Department might have allowed plaintiff to take the necessary written and driving tests that would otherwise permit him to qualify for a license, a license would not have been issued absent a showing of insurance coverage.[3] Plaintiff did not obtain that coverage because, as he alleges and the State does not dispute, he could not afford it.

Plaintiff is presently incarcerated in the St. Johnsbury Regional House of Correction on an unrelated assault conviction and is now eligible for participation in that facility's work release pro-

1. § 801. Proof of financial responsibility required

    (a) The commissioner shall require proof of financial responsibility to satisfy any claim for damages, by reason of personal injury to or the death of any person, of at least $10,000.00 for one person and $20,000.00 for two or more persons killed or injured and $5,000.00 for damages to property in any one accident, as follows:

    (1) From a person who is convicted of any of the following violations of this title:

    (A) Death resulting from careless or negligent operation of a motor vehicle;

    (B) Operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor or drugs;

    (C) Failing to immediately stop and render such assistance as may be reasonably necessary following an accident resulting in injury to any person or property, other than the vehicle then under his control;

    (D) *Operating, taking, using or removing a motor vehicle without the consent of the owner*; . . . [emphasis supplied]

23 V.S.A. § 809 allows the Commissioner of Motor Vehicles, in his discretion and under certain conditions, to retract the financial responsibility requirement after it has been met for three years. A Department of Motor Vehicles regulation further provides, *inter alia*, that a conviction for any violation of the motor vehicle laws or a license suspension or revocation extends the filing period for an additional three years. 2 Vt.Ad.Pro. Compilation, Motor Vehicle Dep't 6.

2. In addition to showing proof of financial responsibility, which drivers without conviction need not do, convicted drivers must pay higher automobile insurance premiums. The Vermont Department of Banking and Insurance, relying upon the guidelines of the Automobile Insurance Plans Service Office of New York City, has determined that a person convicted of operating without consent must pay a premium 75 per cent above base costs.

3. There is not here involved the curtailment or termination of a right, privilege, or status held by the plaintiff. *See, e. g.,* Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (automatic suspension of license and registration of uninsured motorist following involvement in accident, without determination of fault, held violative of due process). Plaintiff here has not taken the required written or driving examinations which he must pass to obtain a license. Nevertheless, we find that plaintiff has standing to sue since, as stated above, proof of financial responsibility is in any case for him an absolute condition precedent to obtaining an operator's license.

gram. He contends that his financial inability to obtain a license will prevent him from receiving employment at the Waterbury State Hospital. We take as true the otherwise somewhat indefinite assumptions which underpin plaintiff's contention. We assume, first, that plaintiff will pass the licensing tests, and, second, that the St. Johnsbury facility will allow plaintiff to drive once he has a license.[4]

Plaintiff concedes that Vermont has a legitimate interest in requiring insurance from financially irresponsible and negligent drivers. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). He argues, however, that his conviction for operating an automobile without the owner's consent indicates neither a propensity to drive dangerously nor a likelihood of inability to satisfy damages sustained by others as a result of his negligent driving. Thus plaintiff contends there is no relevance between the statutory classification in which he is placed as a result of his conviction— especially since he claims he was not the driver of the stolen vehicle—and the purpose for which the classification is made. The statutory scheme is therefore in plaintiff's view wholly irrational and arbitrary, falling short of constitutional requirements.[5]

Furthermore, plaintiff alleges that since his inability to obtain a license precludes him from participating in the work release program, his personal liberty is infringed as a result of the legislative classification of those convicted and those not convicted. This, he contends, necessitates our testing whether the statute's objective is a state interest significantly "compelling" to justify the allegedly discriminatory separate treatment imposed upon those who have been convicted.

With respect to constitutional challenges to state statutes, the United States Supreme Court recently stated the following, in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972):

> The tests to determine the validity of state statutes under the Equal Protection Clause have been variously expressed, but this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose. Morey v. Doud, 354 U.S. 457 [77 S.Ct. 1344, 1 L.Ed.2d 1485] (1957); Williamson v. Lee Optical Co., 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563] (1955); Gulf, Colorado Sante Fe Ry. v. Ellis, 165 U.S. 150 [17 S.Ct. 255, 41 L.Ed. 666] (1896); Yick Wo v. Hopkins, 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220] (1886). Though the latitude given state economic and social regulation is necessarily broad, when state statutory classifications approach sensitive and fundamental personal rights, this Court exercises a stricter scrutiny, Brown v. Board of Education, 347 U. S. 483 [74 S.Ct. 686, 98 L.Ed. 873] (1954); Harper v. Virginia State Board of Elections, 383 U.S. 663 [86 S.Ct. 1079, 16 L.Ed.2d 169] (1966).

---

4. At oral argument counsel for both sides agreed that, if plaintiff is offered the hospital job, he may be allowed to live near the hospital with his mother, who works there and could drive him to work. As that arrangement is only a possibility, we decide this case on its original factual allegations.

5. We find that the constitutional claim made here involves application of the equal protection clause of the fourteenth amendment, alone and not in conjunction with the substantive law of the due process clause as plaintiff argues. *See* Boddie v. Connecticut, 401 U.S. 371, 384–386,

91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (Douglas, J., concurring). Furthermore, for the sake of clarity we note that plaintiff *does not challenge on procedural due process grounds the real source of all the alleged infringements of his personal rights, i. e., his conviction.* Thus the case is unlike Bell v. Burson, note 3 *supra,* and McNamara v. Malloy, 337 F.Supp. 732 (D.Vt.1971) (23 V.S.A. § 801(a) (3) unconstitutional insofar as it required a showing of financial responsibility without any determination of possibility of fault).

The essential inquiry in all the foregoing cases is, however, inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?

We are willing to accept plaintiff's assertion that his personal liberty is, very indirectly to be sure (since he is in a correctional center for his own actions), somewhat affected by operation of the financial responsibility law. The case may also be said to involve a small degree of limitation upon plaintiff's right to travel, although Vermont may no longer be thought of as having only dirt roads and an inadequate transportation and highway system. *Compare* Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc., 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), with Shapiro v. Thompson, 394 U.S. 618, 629–631, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). It could be argued that there is also a small degree of statutory differentiation based upon financial means, although such a differentiation is by no means the object of the statute, and is limited in amount to a sum equal to 75 per cent of the premium. *See* Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Taking these matters cumulatively we take it that we must find a "compelling" state interest in the purpose of the legislation to uphold the attacked statute.

The broad purpose of the Vermont Financial Responsibility Act, challenged in part here, is "the protection of the public." Farm Bureau Mutual Automobile Insurance Co. v. Violano, 123 F.2d 692, 696 (2d Cir. 1941), cert. denied, 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942). That protection is accomplished under the Act[6] by ensuring that persons who have demonstrated in the past a careless or criminal attitude toward the rights of other drivers and users of the highway will not be permitted in the future to subject members of the public to incompensable injury. *See also* Travelers Insurance Co. v. McElroy, 359 F.2d 529, 533 (9th Cir. 1966) (Arizona law); Erwin v. State Farm Mutual Automobile Insurance Co., 232 F.Supp. 530, 538 (E.D.Tenn.1964). It cannot be doubted that the State's protection of its motor vehicle operators, pedestrians, auto and bus passengers and other highway users is a legitimate state interest, and that financial responsibility laws are a proper implementation of that interest. *See* Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933). As stated above, plaintiff in fact concedes that that interest is legitimate and that there is a rational relationship between it and the statutory requirement of proof of financial responsibility upon conviction for careless driving with death resulting, operating under the influence of intoxicating liquor or drugs, or for failure to render assist-

---

6. Vermont's Financial Responsibility Act is somewhat unusual in spelling out specific convictions that lead to the requirement that one post proof of financial responsibility. The California financial responsibility sections, Cal.Vehicle Code §§ 13,350–352, 13,361, however, also list specific acts that can lead to the financial responsibility requirement. Operating without consent is not listed, but § 13,-350(e) covers any felony in the commission of which a motor vehicle is used, a category that arguably covers operating without consent, a felony under Cal.Vehicle Code § 10,851.

Most states have broadly worded statutes that require proof of financial responsibility, usually for a three-year period, whenever a person's license is suspended or revoked. For example, an operating without consent conviction, under 14 Conn.Gen.Stat.Ann. § 229 (1958), can lead to a financial responsibility requirement under 14 Conn.Gen.Stat.Ann. § 112 (1958). In Maine, an operating without consent conviction, in violation of 29 Me. Rev.Stat.Ann. § 900 (1965), can lead (in the Secretary of State's discretion) to a three-year requirement of financial responsibility proof under 29 Me.Rev.Stat.Ann. § 782 (1965).

ance after an accident. See note 1, *supra*. His claim is that no such relationship exists vis-a-vis a conviction for operating without the owner's consent.

Although we have no legislative history to examine here—which of course is not necessarily fatal[7]—we are able to make some judgments from the terms of § 801(a) (1) (D). First, it is entirely rational to conclude that persons convicted of certain motor vehicle crimes, including theft or operation without consent, lack proper concern for the property and personal rights of others. Second, as a matter of common knowledge, persons operating without the owner's consent have a marked propensity to disregard safe speed limits and driving requirements as they flee from the police, and in addition, upon occasion, to use the vehicle for illegal purposes. Third, a great percentage of those who steal automobiles are young[8] and therefore less likely to have, even for a number of years after the theft, the financial resources to satisfy the claims of persons injured by their negligence or recklessness. Requiring people convicted of auto theft to show proof of financial responsibility may remove some monetary burden from the shoulders of the general public that uses the highways—from children going to school in buses to elderly pedestrians on the street—even though it may not remove all careless drivers from the road.

In short, these are considerations which may properly lead to different treatment of plaintiff and persons not convicted of operating without consent. They not only "bear some relevance to the object of the legislation," Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L. Ed.2d 92 (1972); *see* Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), but provide the essential nonarbitrary, rational basis for requiring persons found guilty of oper-

ating without the owner's consent to furnish proof of financial responsibility.

Is the State's interest in affording its public the above-mentioned protection so substantial as to justify precluding plaintiff from obtaining a license to drive? We think so. By his own conduct plaintiff has put himself in the category of persons whose driving may impair the safety of others. His conviction, which he does not contest here, has brought about this result. Vermont's financial responsibility law exists to reduce the imposition of financial disaster on the general public that may be injured through the negligence or recklessness of financially insecure and uninsured motor vehicle operators. The legislation as written is neither arbitrary nor irrational; furthermore it is not our role to suggest alternative legislation which might obviate this particular plaintiff's situation. Suffice it to say that we deem Vermont's interest compelling and sustain § 801(a) (1) (D) as constitutional.

---

7. *See* Schwegmann Brothers v. Calvert Distillers Corp., 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J., concurring).

8. "In 1965, persons under 18 referred to juvenile court constituted . . . 61

percent of all persons charged with auto theft." The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime 1 (1967).