Gerard M. EARNHART, Petitioner,

v.

Richard HEATH, Director, Department of Finance and Administration, State of Arkansas, Substituted Respondent.

No. LR-72-C-96.

United States District Court,
E. D. Arkansas, W. D.
Jan. 17, 1974.

Hugh L. Brown, Little Rock, Ark., for petitioner.

John F. Gautney, Legal Div., Dept. Finance and Administration, Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This is an action for a declaratory judgment brought by Gerard M. Earnhart, a resident and citizen of Sebastian County, Arkansas,[1] against Richard Heath, Director of the Arkansas State Department of Finance and Administration,[2] to secure an adjudication that certain statutes of the State of Arkansas relating to the registration of motor vehicles in this State are unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.[3] Those statutes provide in substance that before a resident of Arkansas may register a motor vehicle or renew a previous registration, he must supply proof that his personal property, including his vehicle, has been properly assessed for local ad valorem taxes, and that all ad valorem taxes due on his personal property, including his motor vehicle, have been paid to the local taxing authorities as provided by law. Respondent denies that the statutes in question are unconstitutional and prays that the petition be dismissed.

The case has been submitted on the pleadings and exhibits thereto, a stipulation of facts executed by counsel for the respective parties, the deposition of Charles Ragland, Administrator of the Motor Vehicle Division of the Department of Finance and Administration, and memorandum briefs.

The Court is met at the outset with at least a formal jurisdictional question. The complaint contains no ju-

---

1. For a number of years Mr. Earnhart has been a member of the Arkansas State Senate.

2. The suit was originally filed against A. B. Hervey, Director of Finance and Administration, State of Arkansas; when Mr. Heath replaced Mr. Hervey as Director, the former was substituted as party respondent.

3. The challenged statutes are Section 1 of Arkansas Act No. 144 of 1953; section 2 of Act 212 of 1953; and sections 1 and 2 of Act 42 of 1969. Those statutes are codified as Ark.Stats., Ann., Repl.1967, sections 75–133.1, 75–133.4, 75–133.20 and 75–133.21.

risdictional allegation as required by Rule 8(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. While 28 U.S. C.A., section 2201 authorizes a federal court in an actual controversy "within its jurisdiction" to enter a declaratory judgment, it is thoroughly established that this statute is not a jurisdictional one, and does not confer jurisdiction on a federal court in a case with respect to which jurisdiction does not otherwise exist. The suit cannot be maintained on the basis of the general "federal question" jurisdiction conferred by 28 U.S. C.A., section 1331(a) because it is not alleged nor does it appear that the amount in controversy, exclusive of interest and costs, exceeds $10,000. However, the Court is satisfied that jurisdiction can properly be predicated on 42 U.S.C.A., section 1983 read in connection with 28 U.S.C.A. section 1343(3).

Section 1983 creates a private cause of action in a case in which the plaintiff has been deprived of a federally protected right by a defendant acting under color of State law, and section 1343(3) creates a federal forum for such a case irrespective of the citizenship of the parties and of the amount in controversy.

The complaint alleges that in 1972 the original defendant or his subordinates refused to grant plaintiff a certificate of registration (license) for a described automobile because plaintiff refused to comply with the Arkansas statutes that have been mentioned. It is admitted that registration was refused on the basis of the statutes, and plaintiff claims that he was thus deprived of a property right without due process of law. And it is evident that in refusing to register plaintiff's vehicle the original defendant or his subordinates were acting under color of State law. Indeed, they were specifically prohibited by State law from issuing the registration certificate in the circumstances that have been outlined.

■ The statements made in the preceding paragraph introduce another preliminary question that confronts the Court, namely, whether in view of the expiration of the license year with respect to which registration of the vehicle was sought the controversy between the parties has become moot. There is no allegation that plaintiff sought to register the vehicle in 1973 without complying with the statutes or that he has done so or is about to do so with respect to a license year beginning in 1974. The record reflects that petitioner can register the vehicle at any time if he is willing to make the proof of tax assessment and payment required by the challenged statutes.

However, no question of mootness has been raised by respondent; the statutes are still on the books, and it is the duty of respondent to enforce them unless they are held unconstitutional;[4] and it is inferable that the controversy between plaintiff and respondent's agency is a continuing one. While the question may not be free from doubt, the Court has concluded that the case should be considered on the merits.

However, the Court will confine itself strictly to the question presented by the petition which is whether or not the challenged statutory scheme is violative of the Due Process Clause of the Fourteenth Amendment. There is no allegation that the statutes in question violate the Equal Protection Clause of that Amendment.

Before stating and discussing the contentions of the parties the Court deems it well to describe to some extent the Arkansas system of licensing or registering motor vehicles and the Arkansas scheme for the taxation of personal property, including but not limited to motor vehicles. The Court will say at

---

4. It should be noted at this point that petitioner seeks declaratory relief only. He *does not ask* that enforcement of the statutes be enjoined. Therefore, there has been no occasion to cause a statutory Court of three Judges to be convened under 28 U.S. C.A., §§ 2281 and 2284.

this point that as herein used terms like "registration" and "licensing," and similar terms, are used interchangeably, and references to "automobiles" include all motor vehicles subject to registration and taxation in the State of Arkansas. The Court will also say that until comparatively recently the licensing of motor vehicles in Arkansas was handled by the Arkansas State Revenue Department, the chief officer of which was the Arkansas State Revenue Commissioner. The licensing function is now performed by the Motor Vehicle Division of the Department of Finance and Administration and references herein to the "Department" relate to the Motor Vehicle Division of that Department.

All motor vehicles which are operated on the public highways of this State and on city streets are required to be registered with the Department and licenses must be renewed annually.

Subject to certain exceptions not necessary to be mentioned here, prior to the effective date of Act 465 of 1967 all existing licenses on Arkansas motor vehicles expired at the same time each year, and all had to be renewed within a limited period of time after expiration. The renewals were handled in local offices of the Revenue Department, and a motor vehicle owner generally had to appear personally at the local revenue office to obtain his renewal. When he did so, he was given a metal license plate with a number thereon and a certificate of registration commonly called a "pink slip." The license plate was affixed to the car and was changed each year. If the car was sold during the year, the plate "went with the car."

Between 1952 and 1954 a person desiring to register a motor vehicle or to renew a registration was required to make documentary proof that the vehicle had been currently assessed for ad valorem taxation under the general tax laws of Arkansas. Since 1954 an applicant for a license must produce documentary proof that all of his personal property subject to taxation has been assessed

and that he has discharged his personal tax liability for the preceding calendar year.

By reason of the fact that licenses expired at the same time each year, of the fact that renewal of a license required a personal appearance at the local revenue office, and of the fact that documents showing assessment and payment of personal property taxes had to be produced, the renewing of licenses became a harrowing experience for many Arkansas automobile owners, particularly those residing in the more populous counties. Long lines were formed, the process of handling applications was slow, and many persons after spending much time in a line discovered to their discomfiture that they had not brought with them all of the necessary documents.

The system was changed radically by Act 465 of 1967 which created a permanent registration system, and authorized the annual renewal of licenses by mail with the renewals being handled by the Department out of Little Rock. Under the present system each owner of a motor vehicle is assigned a permanent registration number which is shown on a license plate to be affixed to his car and which is also shown on his original certificate of registration and on each annual certificate of renewal. The license plate is not changed each year; instead, when a license is renewed, the registrant receives a renewal certificate and a small decal indicating the license year which is affixed to the plate. If the registrant disposes of his vehicle, he retains his registration number and his plate, and his number serves to identify him and also to identify any replacement vehicle after the replacement has been brought to the attention of the Department within the prescribed time after the replacement.

Under Act 465 of 1967 licenses do not all expire at the same time; rather some expire at the end of each month and must be renewed prior to the end of that month. As renewal time draws near, the Department notifies the owner by

mail and instructs him as to what he must do to obtain a renewal certificate and decal. At the present time the owner must submit written evidence that he has assessed his personal property for taxation for the current year, and that he has paid his personal property taxes for the preceding year. And he must also submit a current certificate to the effect that his vehicle has passed a safety inspection made at an authorized inspection station within a limited period prior to the expiration of the current registration. Additionally, the owner must remit to the Department the fee charged for the registration, which fee varies with the weight of the vehicle.

The foregoing description of the Arkansas licensing system may have been oversimplified to some extent and may contain some minor errors or be subject to minor qualifications, but the Court deems it sufficient for present purposes.

Turning now to the general tax laws of Arkansas, Section 5 of Article 16 of the Arkansas Constitution of 1874 provides in substance that all property, whether real or personal, not exempt from taxation is to be taxed according to its value; that the basis of valuation is to be uniform throughout the State, and that subject to a very limited exception no species of property is to be taxed higher than another species of property of equal value.

Arkansas property taxes are assessed and paid on the basis of calendar years, and the tax that is due for one year is payable during the following year and becomes delinquent after October 1 of that year.

Ignoring certain categories of personal property that are exempt from taxation, all personal property having a tax situs in Arkansas is subject to ad valorem taxation. The liability extends to both tangibles and intangibles. Taxable property includes such things as bank deposits and money, household goods and appliances, stocks and bonds, machinery and tools, agricultural equipment and implements, livestock, and many other types of personal property. Motor vehicles are subject to ad valorem taxation, and are subject to it whether they are registered or not.

To digress for a moment, the Court will point out that the "tax year" of an Arkansas motor vehicle and the "license year" of that vehicle are not the same except with respect to license years that expire on December 31 of each calendar year. However, if a license year expires during the first eight months of a calendar year, as most of them do, a vehicle owner desiring to renew his license must pay his personal property taxes for the preceding year prior to the October 1 deadline that otherwise would be available to him.

Returning now to the tax laws, property is required to be assessed at market value or some fraction thereof. The ad valorem tax rate is expressed in terms of mills on the dollar of valuation, and the millage rates may vary among taxing agencies, whether counties, municipalities, public school districts, or improvement districts. Prior to the adoption of Amendment No. 47 to the Arkansas Constitution in 1958 the Legislature levied ad valorem taxes for State purposes, but such levies were prohibited by that Amendment, and now all ad valorem levies are made by local subdivisions and agencies for local purposes, including public education. And it may be observed that the bulk of the millages levied all over the State are for the benefit of the public schools.

In Arkansas the assessment, levying, and collection of property taxes have always been primarily matters of local control, although there are some rather stringent State limitations on the taxing powers of local agencies.

Each of the State's 75 counties has an elected Tax Assessor, whose duty it is to put taxable property on the tax books at its proper valuation. Each county has a Quorum Court made up of elected Justices of the Peace, which Courts make the actual tax levies. And each county has an elected Tax Collector whose duty

it is to collect the taxes charged to him on the tax books and to make proper remittances of his collections.

While an Arkansas tax assessor theoretically has a good deal of power to discover taxable personal property and put it on the books, he, being an elected official, is apt to use that power sparingly. Consequently, it has been true historically in Arkansas that assessment of personal property has been principally on a voluntary basis, although some assessors are more stringent than others.

Although Arkansas contains taxable property worth millions of dollars, the amount of personal property which is actually assessed has always been extremely low and tax revenues derived from personal property taxes have been correspondingly low. Prior to 1951 many owners of personal property, including motor vehicles, assessed no personal property whatever. Since 1951 many owners of motor vehicles assess them but nothing else. Some assessors are willing to accept the listings of motor vehicles and let the matter go at that. Others try to get on the books in addition to motor vehicles at least the household goods and appliances of residents of their counties. However, at least as far as individual taxpayers are concerned, there has never been any real effort to assess and tax items like stocks and bonds, bank deposits, contents of safe deposit boxes, and livestock, to mention only a few items of personalty theoretically subject to taxation.

The problem is complicated by the fact that Arkansas has no really effective system of collecting delinquent personal property taxes. If the owner of real estate permits his taxes to become delinquent, his land is sold automatically at auction subject to his right to redeem within a certain period of time. If he does not redeem, he may lose his property assuming the validity of the delinquent tax sale. No such remedy exists with respect to delinquent personal property taxes. The law authorizes the appointment of Delinquent Tax Collectors who are supposed to collect delinquent taxes on personal property on a commission basis. At least some counties have such officials who make more or less vigorous efforts to collect delinquent personal property taxes by means of persuasion, threats, or judicial proceedings. However, those efforts, to the extent that they are made, really do not amount to very much.

By 1951 it had occurred to the Arkansas Legislature that personal property tax revenues could be increased very substantially if the owners of motor vehicles were required to assess them for taxes as a condition to obtaining or renewing their licenses. And Act 130 of 1951 made such a requirement. That Act, however, did not condition the issuance or renewal of an automobile license on the actual payment of personal property taxes on the vehicle or on any other property owned by the applicant for registration. While it is probably fair to say that Act 130 did increase revenues substantially, it is also probably fair to say that many motor vehicle owners assessed their vehicles so as to obtain licenses but then neglected to pay the taxes on the vehicles.

In 1953 the Legislature moved to supply the deficiency in Act 130 of 1951 by adopting Acts 144 and 212 of 1953 which are involved in this case. Those Acts were substantially reenacted as sections 10 and 11 of Act 465 of 1967. And they were amended and perhaps strengthened by sections 1 and 2 of Act 42 of 1969, which are also involved here. The 1953 and the 1969 legislation requires as a condition to obtaining or renewing a motor vehicle license a current assessment of all taxable personal property owned by the applicant, and payment of the preceding year's ad valorem tax on all of the applicant's personal property subject to taxation.

To sum up the whole matter, since 1953 the laws of Arkansas relating to the licensing of motor vehicles have been geared both to the Arkansas laws relating to the assessment of personal property for taxation and to the payment of personal property taxes assessed and lev-

ied. It is this gearing that petitioner would have the Court declare unconstitutional in this case.

In support of his position petitioner contends, and the Court finds from the record, that the requirements here challenged do not contribute and have no relation to the efficient functioning of a motor vehicle registration system designed to identify vehicles and the owners thereof, which is the basic purpose of such a system. If the legislation here challenged were stricken down in its entirety, the Department could still register motor vehicles and renew existing registrations, and could still keep up with titles to motor vehicles and record security interests affecting such vehicles.

In view of the foregoing petitioner contends that the gearing of the registration laws to the tax laws is arbitrary and capricious, is not reasonably related to any legitimate legislative purpose in the field of motor vehicle registration, that the challenged statutes are "revenue measures," and that they in fact amount to the levy of property taxes by the Legislature which is forbidden by Amendment No. 47 to the Arkansas Constitution. And he argues that to deny the owner of a motor vehicle registration of his vehicle because of noncompliance with the tax assessment and payment requirements that have been described amounts to a deprivation of property without due process of law.

The position of respondent is that the operation of a motor vehicle on public streets and highways is a privilege which is subject to reasonable restrictions and conditions, and that the requirements in question are reasonable and legitimate, and that their enforcement does not violate the Due Process Clause of the Fourteenth Amendment.
■■ On the present record, the ultimate question for decision may be stated as follows: Can the State of Arkansas, conformably with the Due Process Clause of the Fourteenth Amendment, come to the financial aid of its lo-

cal agencies and subdivisions by making it a condition to the licensing of a motor vehicle that the applicant for the license establish that he has assessed and paid local property taxes on his personal property, including, but not limited to, the motor vehicle that he desires to register?

Let it be said, first, that legislation similar to that involved here has been upheld in a number of jurisdictions against attacks on constitutional grounds, including the claim that such statutes are violative of the Due Process Clause. 7 Am.Jur.2d, Automobiles & Automobile Traffic, § 52; State of New Mexico ex rel. Taylor v. Mirabal, 1928, 33 N.M. 553, 273 P. 928, 62 A.L.R. 296; see also cases cited in the Annotation appearing in 62 A.L.R. 304–305. On the other hand, such statutes have been held invalid by the Court of Appeals of Kentucky in Department of Revenues v. Williams, Ky., 1961, 351 S.W.2d 875; and Schoo v. Rose, Ky.1954, 270 S.W.2d 940.

What is involved here is the power of a State to refuse to register a motor vehicle unless the applicant satisfies obligations imposed by the general taxing statutes of the State. Where registration is refused, the effect is to deny the owner of the vehicle lawful access to public streets and highways as far as operation of the vehicle is concerned.

It would appear obvious that the ability of the owner of an automobile to use it lawfully on the streets and highways, whether that ability be called a "right" or whether it be called a "privilege," falls within the protection of the Fourteenth Amendment. On the other hand, it is equally clear that a vehicle owner's access to and use of the roads, like just about anything else, is subject to reasonable conditions and restrictions that governmental agencies may lawfully impose. The State has a right to require that motor vehicles be licensed and to make compliance with reasonable requirements a condition to granting a license. Bell v. Burson, 1971, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90; Ex parte Poresky, 1933, 290 U.S. 30, 54 S.

Ct. 3, 78 L.Ed. 152; Continental Baking Co. v. Woodring, 1932, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155; Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091.

A State has a legitimate interest in the ability of local taxing authorities to collect efficiently ad valorem taxes to which they are entitled by State law, and the Court is of the opinion that a State can assist the local authorities in effecting such collections by any legitimate means reasonably calculated to that end. The interest of the State lies in the fact that the more funds local authorities are able to derive by local taxation, the fewer will be the demands on the State treasury for funds to enable local governments and agencies to perform local governmental functions.

Granting that a State agency charged with the duty of registering and licensing motor vehicles is not directly concerned with the question of whether ad valorem taxes on the vehicles sought to be licensed have been assessed and paid, and granting that the Department could carry out its strict licensing functions without the legislation here challenged, as indeed its predecessor did for many years prior to 1951, nevertheless the Court does not consider that Due Process is offended by that legislation.

The requirements of the legislation, while perhaps somewhat burdensome to petitioner and to other motor vehicle owners, do not impose upon him or upon them any duty not already imposed by the general State laws relating to property taxation that have been described. The Legislature simply has said to Arkansas motorists that if they want to license their vehicles, they must comply with their already existing duty to assess their personal property for taxation and to pay their personal property taxes. That duty has always existed, and it exists with respect to motor vehicles regardless of whether they are registered. The Court sees nothing arbitrary, capricious, or unreasonable in that requirement, and its efficaciousness to produce local revenues cannot be doubted.

Petitioner argues that the challenged statutes amount to a "revenue measure," and, indeed, to an indirect levy of a property tax prohibited by Arkansas Constitutional Amendment No. 47. The Court does not accept that argument. Amendment No. 47 does not prohibit the State from adopting revenue measures, and it does not prohibit the State from giving financial assistance to political subdivisions or agencies or from assisting them in collecting taxes that they are lawfully entitled to collect. The Amendment simply forbids the Arkansas Legislature from levying any ad valorem tax on property, and the statutes in question do not do that either directly or indirectly.

It should perhaps be made clear that in enforcing the 1953 and 1969 statutes that are before the Court the Department does not act as a "tax ferret." It makes no effort to determine whether the vehicle to be licensed has been valued properly, or whether the applicant for registration owns other personal property which he has not listed for taxation or whether he owns other personal property on which he has not paid his taxes. Those matters are left to the local authorities. If the owner of a motor vehicle makes a listing that is satisfactory to the local Tax Assessor, and if he pays the tax on the property that he has assessed, and if he makes proof of those facts, that is the end of the matter as far as the Department is concerned. It does not look beyond the face of the documents tendered by the applicants.

Of course, from a practical standpoint the assessment made by the applicant must include the motor vehicle itself, and in many instances that is the only item of personalty that the applicant for registration lists. If that is satisfactory to the local Assessor, it is satisfactory to the Department.

It may be argued that the challenged statutes are overbroad in that their requirements are not limited to motor vehicles to be registered but extend to all personal property owned by the applicants for registration and subject to

taxation. That argument overlooks the fact that under Arkansas law the owner of property subject to taxation is required to assess all of it; while he may and usually does get by with assessing and paying taxes on less than all of his taxable personal property, he has no right to do so. Thus, again, the legislation in question imposes no duty that is not otherwise existent.

Counsel for petitioner cites principally Department of Revenues v. Williams, supra. The Court has read that case and has also read the earlier case of Schoo v. Rose, supra. Both of those cases were decided ultimately on the basis of a Kentucky constitutional provision forbidding "special legislation," rather than on any federal constitutional ground, and the Court does not consider them to be in point or particularly persuasive in this case.

A judgment dismissing the petition as amended will be entered.