### John Bieling v. James E. Malloy, Commissioner of Motor Vehicles

[346 A.2d 204]

No. 229-74

Present: Barney, C.J., Smith, Daley and Larrow, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed October 7, 1975

*John A. Dooley, III,* and *Michael H. Lipson,* Vermont Legal Aid, Inc., Burlington and *Michael J. Hertz,* Vermont Legal Aid, Inc., Springfield, for Plaintiff.

M. *Jerome Diamond*, Attorney General and *Charles D. Hassell*, Assistant Attorney General, Montpelier, for Defendant.

**Barney, C.J.** The plaintiff is one of several making common cause in this Court because their automobile driver's licenses are threatened with suspension for failure to pay their poll taxes. The matter is before the Court on questions certified under V.R.A.P. 5(a), as follows:

> Whether 23 V.S.A. § 604, which empowers the Commissioner of Motor Vehicles to suspend the motor vehicle operators licenses of the plaintiff and plaintiff-intervenors for nonpayment of poll taxes,
>
> 1. violates their rights to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution?
>
> 2. violates Chapter I, Article 9 of the Vermont Constitution, prescribing uniformity of taxation?
>
> 3. violates the Fourteenth Amendment due process clause of the United States Constitution or Chapter I, Articles 1, 18 or 19 of the Vermont Constitution?
>
> 4. exceeds the taxing power of the State of Vermont and is, therefore, invalid?

The facts have been stipulated to. Although some reference to poverty is made in the stipulation in connection with two of the parties, the issue now before us deals only with the right of the State to suspend the license, and not with any of the exemptions granted for poll tax liability under the statute. 32 V.S.A. § 3801. The procedures for resolving those questions were dealt with in *Aiken v. Malloy*, 132 Vt. 200, 315 A.2d 488 (1974). We must here presume that the due process requirements of that case have been carried out if the certified issues are to be dealt with. Furthermore, any issues relating to the impact of actual poverty subsequent to the adjudication before the Board of Civil Authority are not raised by the agreed facts. For that reason, any such issues must await development of the factual situation in an appropriate proceeding and will not be dealt with in this opinion. Some of those issues should have been tried out before the Board of Civil Authority and, if questioned, their conclusions challenged by appropriate process. See *Aiken v. Malloy, supra*, 132 Vt. at 200. For

524

the purposes of constitutional challenge, we must assume here that there was no eligibility for a statutory exemption.

Thus, we are left with a group of taxpayers who, for reasons of their own not connected with any legal exemption, are refusing to pay local poll taxes in amounts ranging from $13.33 to $47.98 plus interest and penalties, depending on the number of years of delinquency and the variations in the local tax rates. The driving privilege which they are seeking to protect carries a $6.00 biennial fee. 23 V.S.A. § 608.

The poll or capitation tax is a very old tax. It is recognized as an authorized levy in article I, section 9 of the United States Constitution, well prior to the adoption of the income tax authority through the sixteenth amendment some one hundred and twenty-four years later. It came into disrepute through its use as a device for disenfranchisement of voters, a restraint on the exercise of a constitutionally favored and protected liberty. See *Harper* v. *Virginia Board of Elections*, 383 U.S. 663, 668–69 (1966). But Mr. Justice Douglas, speaking for the Court there said of the poll tax:

> [It] is an old familiar form of taxation; and we say nothing to impair its validity so long as it is not made a condition to the exercise of the franchise.

In Vermont this tax is part of the local tax-raising authority. By valuing the "persons" at a dollar or a dollar and a half for grand list purposes, 32 V.S.A. § 3601, it assumes that citizens sharing the benefits of local government share its burdens, so that those with no assets reachable by local tax powers do not totally transfer the costs of community services available for them to property owners of various types.

Since the poll tax acts in conjunction with the grand list and town tax rate, it forms part of the general funds, and goes to support all of the local functions that go to make up the tax rate. This includes such things as town highways, schools, fire district taxes, as well as a State assessed tax for old age assistance. The procedures for setting the polls, either in a separate list under 32 V.S.A. § 5020 or into the grand list itself under 32 V.S.A. §§ 3601 and 4152, are explained in *Aiken* v. *Malloy, supra,* 132 Vt. at 204–05. This tax scheme is the single most important authorization given to the local com-

munities by the State to raise revenues for the full spectrum of local services. It is a general tax, not a special tax.

Because of its importance, the State has authorized the invocation of significant and serious penalties on a person for failure to pay his share of the cost of local government. For those who own taxable real estate in the town, the real estate is subject to a tax lien. 32 V.S.A. § 5061. For those who own taxable personalty, a similar provision applies. 32 V.S.A. § 5071. A civil suit to directly collect the overdue tax is available. 32 V.S.A. § 5221. The statutory authority then moves on to more severe remedies such as distraint and sale of personalty, 32 V.S.A. §§ 5191–5193, or sale of real estate, 32 V.S.A. §§ 5252–5254, 5256, owned by the taxpayer. His wages are subject to levy. 32 V.S.A. § 6091. The ultimate sanction against a delinquent taxpayer is arrest and commitment to jail until payment of the tax. 32 V.S.A. § 5194. The remedy of suspension of his drivers' license, 23 V.S.A. § 604, falls somewhere among these collection devices.

These plaintiffs claim the suspension of their motor vehicle operator's licenses for non-payment of their poll taxes is unconstitutional, both as to the United States Constitution and our own Vermont Constitution. Their contentions are encompassed in the certified questions already set out.

The equal protection argument is argued under two headings. The first alleges that license suspension for those not exempt who do not pay their poll taxes is not supportable under the police power. To bolster the argument they presume to find two classes, payers and non-payers, that somehow make the imposition of the penalty against the defaulters invidious.

The delineation of classes in situations where they are not explicit is, on occasion, a helpful device assisting in logical analysis. It can also, on occasion, become merely a question-begging device. In this case, any number of classifications present themselves: the real property owners and those without; similarly, personal property owners and those without; wage earners and non-wage earners; those with any sort of property reachable with legal process and those without. For all of these, the impact of the tax-enforcement laws is necessarily different. No case says such differences immobilize the enforcement of general tax laws; the distinctions are legally acceptable.

The problem we are dealing with is not one dealing with motor vehicle operators, it is one dealing with the taxing authority of a sovereign state, expressed in its statutes and benefiting its municipalities. Since it is not a special tax, but the general and basic tax through which municipal operations are financed, fine drawn lines between "police power" and "tax power" accomplish little toward logical analysis of the basic problem.

Certainly states have a "compelling state interest", whatever artful turn may be given that phrase in the interest of a foregone result, in seeing to the financing of municipal operations. Unlike many states, Vermont sprang from her towns, rather than vice versa, and has attempted to preserve as much of that priority as is constitutionally permissible.

The fundamental question is, as previously stated, whether or not it is constitutionally proper to withdraw operator's license privileges from those who do not pay their poll taxes. No advantage, logical or otherwise, is gained in attempting to solve it by devices of classification or labelling. Unless there is some constitutional prohibition, the attributes of sovereignty itself indicate an affirmative answer, whether that is considered as part of some taxing or police power, or combination.

The restrictions and distinctions talked about in cases such as *Champlain Valley Exposition* v. *Essex Junction*, 131 Vt. 449, 309 A.2d 25 (1973) deal with actions and powers not given to municipalities, unless justified under some general power or grant. The municipalities here have been given full statutory authority.

Looking first to the Vermont Constitution, the argument that chapter I, article 9 is violated by the combination of the poll tax law and the license suspension law must be met. That article binds every citizen to contribute his proportion towards the expense of protecting his enjoyment of life, liberty, and property. The poll tax itself is a lawful device for seeing that he does so. The existence of the license forfeiture provision does nothing to make it disproportionate.

The various arguments against this device center most strongly on its claimed lack of relation to the object of the poll tax. It is claimed that all sorts of consequences follow from that that must cripple municipal tax collections in this manner. The argument can first be met on those terms. Town

taxes usually contain a highway tax within them, whose relevance to the motor vehicle question must be acknowledged. Furthermore, the argument that it is somehow an extreme penalty, also advanced, would seem to ring hollow in the face of the penalties that seize property, attach wages, and imprison.

But it seems reasonably apparent that the argument can be met on the ground of State power. The language of 23 V.S.A. § 604 penalizes the taxpayer who "neglects and refuses" to pay his poll taxes after demand. The language of *Aiken* v. *Malloy, supra,* 132 Vt. at 206, recognizes it as a weapon in the municipal arsenal for the collection of that tax. This is, perhaps, the single most effective weapon short of actual incarceration that can reach those citizens whose circumstances render them immune to process reaching property or wages.

We are not dealing with the actually poor in this case as we earlier noted; their remedy is elsewhere. We are dealing with the power to collect taxes, a fundamental attribute of sovereignty. See *First National Bank* v. *Commissioner of Taxes,* 111 Vt. 281, 292, 16 A.2d 184 (1940). We are also dealing with the power of that sovereign to bestow or withhold a privilege, a power to be exercised on uniform and reasonable ground. *Aiken* v. *Malloy, supra,* 132 Vt. at 206. It appears to this Court, since the actually poor are exempt, that it is otherwise reasonable to expect citizens not otherwise exempt to fulfill their constitutional obligations to contribute their proportionate share as a precondition to being licensed citizen drivers of the State of Vermont. It has not been shown that the United States Constitution requires otherwise.

*The four questions certified are all answered in the negative, and the cause is remanded.*