Jerome J. **WELLS**
and
Edward A. **Sweetser et al.,**
**Intervening-Plaintiffs,**

v.

James E. **MALLOY,** Commissioner of Motor Vehicles of the State of Vermont.

**Civ. A. No. 73–30.**

United States District Court,
D. Vermont.

Oct. 24, 1975.

Roger E. Kohn, Hinesburg, Vt., and Michael J. Hertz, Vermont Legal Aid, Inc., Springfield, Vt., for plaintiffs.

Richard M. Finn, Asst. Atty. Gen., Montpelier, Vt., for defendant.

COFFRIN, District Judge.

This lawsuit involves the Vermont Motor Vehicle Purchase and Use Tax, 32 V.S.A. § 8901 et seq. Vermont levies a tax of four percent of the taxable cost of a motor vehicle purchased in Vermont by a resident, or, alternatively, four percent of the average book value of a vehicle at the time it is first registered in the State or transferred to a new owner, up to a maximum tax of $300.00. 32 V.S.A. §§ 8903, 8907. If the tax is not paid within 30 days of the date the automobile is registered, a penalty of one percent of the taxable cost but in no event to exceed $150.00 is imposed. 32 V.S.A. § 8905(c)(Supp.1975). In addition to the penalty, the Commissioner of Motor Vehicles suspends the purchaser's right to operate a motor vehicle in Ver-

mont until the tax is paid. 32 V.S.A. § 8909.[1]

Plaintiff Wells did not pay the tax imposed by § 8903 because he was unable to do so. Consequently, his right to drive was suspended by the Commissioner of Motor Vehicles, but Wells still needs to be able to drive to visit the doctor, shop for groceries, and attend to other details of daily life. No other member of his household holds a driver's license.

Wells brought this suit to obtain a declaration that the suspension provision of § 8909 is unconstitutional and an order that the Commissioner reinstate his driving privilege. Since the lawsuit was filed, other victims of § 8909 have intervened as plaintiffs. We granted temporary relief pending resolution of plaintiffs' claim that they have been denied equal protection of the law.

The action is based on 42 U.S.C. § 1983, and we have jurisdiction over such claims by virtue of 28 U.S.C. § 1343. This suit is not barred by 28 U.S.C. § 1341 which concerns injunctions against the assessment, levy, or collection of state taxes. *See Wells v. Malloy*, 510 F. 2d 74 (2d Cir. 1975).

■ Originally it appeared that a three-judge court would have to be convened to determine the merits of plaintiffs' claim because the complaint sought injunctive relief against a statute of statewide application, 28 U.S.C. § 2281. It now appears, however, that this cumbersome procedure is not necessary because plaintiffs and defendant commendably have entered into a stipulation which permitted Wells to amend his complaint to omit any request for injunctive relief, and the defendant in turn has agreed to administer § 8909 in accordance with any declaratory judgment we may issue. Since the plaintiffs do not request injunctive relief nor is such relief contemplated, we may proceed to the merits of the constitutional claim. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155, 83 S.Ct. 554, 9 L.Ed. 2d 644 (1963). The case is before us at this time on cross motions for summary judgment since the facts are not in dispute. Fed.R.Civ.P. 56.

### A. *Equal Protection*

Plaintiffs claim that § 8909 sets up two classes: people who owe a Purchase and Use Tax assessment to the State, and people who do not. The Commissioner of Motor Vehicles is required to suspend the driving privilege of any person who owes but has not paid the tax. Plaintiffs argue that Vermont must demonstrate some compelling state interest to justify suspending the right to drive solely for the reason that an individual has not paid this tax. They also argue that even if strict scrutiny is not appropriate in this instance there is still no rational basis for the suspension since payment or nonpayment has nothing whatsoever to do with an individual's ability to drive carefully and safely.

■ At the outset we must decide whether or not to apply the strict equal protection test. Where a statute burdens a fundamental right or draws a suspect classification, it must be able to withstand strict scrutiny in order to survive an equal protection challenge. In this instance there is no fundamental right. Although a driver's license is an important property right in this age of the automobile, it does not follow that the right to drive is fundamental in the constitutional sense. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 30–34, 93 S.Ct. 1278, 36 L. Ed.2d 16 (1973). *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), is not to the contrary. *Bell* only holds that the right to drive cannot be taken away without procedural due process of law. Since there is no fundamental right to drive, the strict test only applies if the statute draws a suspect clas-

---

1. The Vermont legislature recently amended 32 V.S.A. § 8905(a) to prohibit the registration of an automobile for which the tax had not been paid. Act No. 96, approved April 30, 1975, effective July 1, 1976.

sification based on race, nationality or alienage. *United States v. Kras,* 409 U. S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Clearly § 8909 draws no suspect classification along such lines.

Plaintiffs cite two cases from this district as authority for the proposition that the strict test should apply where suspension of the right to drive is at stake. *Miller v. Malloy,* 343 F.Supp. 46 (D.Vt.1972); *Wright v. Malloy,* 373 F. Supp. 1011 (D.Vt.1974), *aff'd,* 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974). *Miller* involved suspension of a driver's license pursuant to 23 V.S.A. § 801(a)(1) (D) which requires a person convicted of "operating, taking, using or removing a motor vehicle without the consent of the owner" to furnish proof of financial responsibility at the peril of losing his license. The court decided that it had to find a compelling state interest in order to justify the suspension because the cumulative effect on plaintiff's liberty and right to travel plus the greater burden on persons of modest means inherent in any state statute that makes a financial demand on its citizens required application of the strict test. The court went on to find a compelling state interest in Vermont's legitimate concern for the financial security of victims of highway accidents who might be injured bodily or in their property through the carelessness of drivers who had given evidence of an inability to drive safely in the past. In *Wright* the court did not find it necessary to reexamine the reasoning in *Miller,* so that case adds little to the present discussion.

After careful consideration, we do not consider that *Miller* is controlling precedent. In the first place, *Miller* was decided before *San Antonio Independent School District v. Rodriguez, supra,* in which the Supreme Court disparaged the argument that a discrimination based on relative wealth was in any way suspect. *Wright v. Malloy, supra* at 1019. Secondly, we do not find a liberty interest here to the same extent as the court found in *Miller.* Miller was in jail on an unrelated assault charge. He claimed that if his driving privilege were reinstated he would be able to take advantage of a prison work-release program. Without the right to drive he would have been unable to commute to Waterbury State Hospital where a job awaited him. In contrast to Miller, Wells and all the other plaintiffs in this lawsuit, so far as we know, are able to go freely where they wish, subject only to the limitation that they may not personally operate an automobile. As the court said in *Miller,* "Vermont may no longer be thought of as having only dirt roads and an inadequate transportation and highway system. *Miller v. Malloy, supra* at 50. It is certainly possible to get from place to place using public transportation or by taking advantage of the good nature of friends or family members. None of the plaintiffs needs to regain his driving privilege in order to be released from confinement. The court in *Miller* based its decision to apply the strict test on the cumulative weight of several arguments. Since one of these arguments has been disparaged by a subsequent decision of the Supreme Court and another does not apply to the facts we have before us to the same extent it did in *Miller,* we think the controlling factors have been altered to such an extent that the *Miller* holding should not be considered to apply to the pending case.

■ Since there is no suspect class and no fundamental right involved in this lawsuit, the applicable standard for measuring the propriety of Vermont's classification is whether there is a rational justification for the lines which have been drawn. *United States v. Kras, supra,* 409 U.S. at 446, 93 S.Ct. 631.

■ The rational basis is readily apparent because the Purchase and Use Tax is a revenue collecting measure and § 8909 is clearly designed to aid in the collection of the tax. Since losing one's right to drive is a great inconvenience, the potential loss operates as an incentive to make prompt payment. We do

not understand plaintiffs to argue that § 8909 is not effective. To the contrary, the fact that Wells brought this lawsuit indicates that he believes the State's strategy is too effective to ignore. Accordingly, we find there is a rational basis for suspending an individual's right to drive until he has paid any Purchase and Use Tax he may owe.

■■ The thrust of plaintiffs' argument is that § 8909 cannot be justified as an exercise of the police power, but that argument misses the mark. Section 8909 is justified by Vermont's power to tax which is an inherent attribute of sovereignty. *Bode v. Barrett*, 344 U.S. 583, 585, 73 S.Ct. 468, 97 L.Ed. 567 (1953). A state may place restrictions on a citizen's right to use his car on public highways for reasons which are not directly related to the health, safety, and welfare of society. *See Earnhart v. Heath*, 369 F.Supp. 259 (E.D.Ark.1974); *Bieling v. Malloy*, 133 Vt. ——, 346 A.2d 204 (1975).

### Taxing Power

Our inquiry does not end at this point, however, for plaintiffs argue that suspending the right to drive causes personal hardship. They also argue that the legislature should not suspend the right to drive but should instead require payment of the Purchase and Use Tax as a condition precedent to registering a motor vehicle.[2] In essence these arguments are perfectly consistent with our conclusion that the collection strategy in § 8909 is rationally related to Vermont's legitimate interest in collecting taxes which the legislature has imposed. Plaintiffs in effect admit that the statute they attack is rational and effective, but even so they argue that suspending the right to drive is beyond the pale of fair and just collection techniques. This argument requires us to determine whether § 8909 transgresses any limits there may be on a state's authority to prescribe methods for collecting the taxes which it has imposed.

■ The power to tax is an inherent aspect of sovereignty. *Bode v. Barrett, supra*, 344 U.S. at 585, 73 S.Ct. 468. Included within the power to tax is the power to enforce uniformly the collection of a tax by any constitutional means. *United States v. Hester*, 137 F.2d 145, 147–148 (10th Cir. 1943). The only requirement is that the means used be fair, reasonable, and equitable. *Creque v. Shulterbrandt*, 121 F.Supp. 448, 451 (D.V.I.1954). *See also Bieling v. Malloy, supra.*

■ Generally speaking collection strategies are of two kinds. The legislature may provide for a suit to collect a tax or for distraint and sale of a delinquent taxpayer's property. Such collection methods produce revenue directly, in contrast to the collection strategy used here which seeks to coerce payment by suspending a privilege. Vermont gets no revenue from suspending plaintiffs' right to drive, but the inconvenience to the delinquent taxpayer encourages payment of the tax. In addition to direct and indirect collection methods, a legislature may impose a penalty for failure to pay a tax in any amount it sees fit. *Bankers Trust Co. v. Blodgett*, 260 U.S. 647, 651, 43 S.Ct. 233, 67 L.Ed. 439 (1923). Clearly suspending driving privileges is in one sense a penalty, and conversely, the fear of incurring an additional sum as a fine for late payment of a tax is an incentive to pay promptly. But though there may be some difficulty in telling the two apart, a distinction can be drawn. In theory a coercive device is only proper to compel payment. Once the tax is paid the pressure should be removed. This is the theory which underlies civil contempt of court. *See International Business Machines Corp. v. United States*, 493 F.2d 112, 115 (2d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). Section 8909 provides for suspension of driving privileges only so long as the tax remains unpaid. As such it is not like a penalty which would

---

2. See note 1, above.

be final and definite once the time for payment had passed.

■ The fact that plaintiffs are unable to pay the tax does not make a coercive collection method unreasonable. Generally speaking, a coercive strategy is more appropriate where there is a willful refusal rather than a present inability to comply with a legal duty. Although the State may have believed that if the taxpayer could afford the purchase of the car he should be able to afford the tax and a little arm-twisting might cause his delinquency to disappear, we nevertheless are bound by the facts of this case, and we assume that plaintiffs' inability to pay the tax imposed is genuine. Regardless of this, however, plaintiffs' current financial straits may well be temporary, Vermont has a legitimate interest in collecting the tax from assets which plaintiffs may acquire in the future. Perhaps it would be more apt to suspend driving privileges at such time as plaintiffs may acquire the means to pay the tax, yet it is a practical impossibility, not to mention an invasion of privacy for Vermont to maintain so vigilant a surveillance of plaintiffs' finances. Rather than be a watch dog, Vermont has taken this tack to remind plaintiffs of their continuing obligation. Furthermore, this kind of indirect collection technique may well be the only method which is financially feasible. The cost of direct collection methods when added to the amount of tax due might exceed the value of plaintiffs' available property. This possibility becomes a probability considering the fact that plaintiffs have been unable to pay even the tax, much less the costs of any collection action.

Given the future orientation of § 8909 and the practical shortcomings of direct collection techniques, we cannot say that plaintiffs' present inability to pay makes a suspension of their driving privilege improper.

■ Plaintiffs also argue that suspending their driving privilege is a particularly coercive remedy in Vermont given its "long winters and deep snows . . . ," *McNamara v. Malloy*, 337 F. Supp. 732, 735 n.7 (D.Vt.1971), however we do not believe that this collection strategy is so coercive that it can be called arbitrary or unreasonable. Although our research has not uncovered any authority directly on point, it is clear that a state may refuse to *register* a motor vehicle if the owner has not paid the ad valorem personal property tax on the automobile in question. *See State ex rel. Taylor v. Mirabal*, 33 N.M. 553, 273 P. 928 (1928) ; *Mayor and City Council of Baltimore v. Perrin*, 178 Md. 101, 12 A.2d 261 (1940) ; *Earnhart v. Heath, supra.*[3] Another case upheld a criminal conviction for violation of former § 3540 of the 1939 Internal Revenue Code which imposed a tax on the use of motor vehicles and made illegal the use of any vehicle to which was not affixed a sticker indicating that the tax had been paid. *United States v. Smith*, 62 F.Supp. 594 (W.D.Mich.1945). In light of these cases, it does not seem that suspending a person's driving privilege is so harsh that it must be considered unreasonable. Plaintiffs argue that losing the right to drive is more disabling than being unable to register a car, but that conclusion does not necessarily follow. Although the plaintiffs cannot drive, under the present state of

3. Two Kentucky cases have held that state statutes requiring payment of personal property taxes prior to registering an automobile were improper. *See Schoo v. Rose*, 270 S.W.2d 940 (Ky.1954) ; *Department of Revenue v. Williams*, 351 S.W.2d 875 (Ky.1961). *Schoo* required that all personal property taxes be paid as a condition precedent to registration, but *Williams* only required payment of the tax on the vehicle itself. Although the statutes in question were found to be in violation of the Kentucky constitution, the grounds of decision in each case was that the statute only applied to certain subdivisions of the class of all car owners. Consequently, the statutes were special tax laws as opposed to laws of general application. This characteristic made them invalid and not the fact that registration could be denied for nonpayment of taxes if the statute were otherwise fair and even-handed.

the law they do have at least one automobile registered and available for use which could be driven for them by others. The issue is really whether it is easier to find someone to drive one's own car if one cannot drive, or to obtain a registered automobile for one's own use if one can drive but has no other car. Seen in this light, we cannot conclude that suspension of driving privileges is any more harsh or coercive than refusal to register a motor vehicle, a collection strategy which has been judicially approved in the past and with which plaintiffs do not quarrel in this instance.

As stated above, plaintiffs suggest that Vermont should refuse to register cars rather than suspend a person's driving privilege if the Purchase and Use Tax has not been paid. This argument has some appeal because registration is the event which triggers the tax in the first instance, and refusal by the State to register an automobile on which the Purchase and Use Tax was outstanding would erase the collection problem entirely. But though this argument is appealing and in fact the legislature has adopted this suggestion, we do not think the present solution is so unjust that we should declare it unreasonable and thus overrule the legislature in the field of taxation, an area peculiarly suited to legislative accommodations and one in which courts have traditionally walked very softly. *San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 40–41, 93 S.Ct. 1278. Plaintiffs bolster their argument against the current remedy by stating that there is no logical limit to Vermont's power to use the threat of suspension to compel citizens to honor all sorts of obligations, obligations which may be totally unrelated to use of the highways. But we need not decide whether suspending the right to drive would be unreasonable if it were totally unrelated to an undischarged obligation because in this instance the Purchase and Use Tax is closely related to the right to drive. Defendant's counsel advises that the entire amount collected goes into the highway fund and is used to improve the highway system for the benefit of all users of the roads. This is clearly the statutory intent. *See* 32 V.S.A. § 8901. In light of the purpose to which the tax is put, it is certainly sensible to withdraw a person's driving privilege for failure to pay it. In *Earnhart v. Heath, supra,* a tax on all personal property was involved, and in addition the bulk of the revenue raised by the assessment went to public education rather than to improve the highways. Even though the tax obligation and the use of the money raised was not closely related to the use of automobiles, the state could still refuse to register motor vehicles to compel payment.

In *Bieling v. Malloy, supra,* the Supreme Court of the State of Vermont upheld the constitutionality of 23 V.S.A. § 604 which empowers the Commissioner of Motor Vehicles to suspend the motor vehicle operator's license of those individuals who fail to pay their poll taxes. The poll tax becomes part of the general funds which support all of the local functions of a municipality. As such the use to which the tax is put is far broader in scope and less relevant to motor vehicle operation than the Sales and Use Tax in the instant case although in *Bieling* the court notes that general town taxes usually contain a highway tax within them. In sustaining the constitutionality of § 604, the Vermont Supreme Court points out that the problem is not one involving motor vehicle operators but rather one of the taxing authority of the state together with the power of the sovereign to bestow and withhold a privilege and decides that the withholding of operators' licenses for nonpayment of poll taxes is a reasonable and valid exercise of the state's power to assure that citizens who share the benefits of government likewise share its burdens.

Present in the case before us and not present in *Bieling* is the admitted pover-

ty of the plaintiffs and their inability to pay the tax. However, as discussed earlier, poverty alone does not create an unreasonable classification for equal protection purposes and although the plaintiffs may suffer inconvenience by the deprivation of their motor vehicle licenses, such deprivation does not amount to a denial of a right fundamental in the constitutional sense.

In summary, it appears that Vermont's decision to suspend a person's right to drive if he has not paid the Purchase and Use Tax is a permissible tax collection strategy, even though plaintiffs are unable to pay the tax at this time. The suspension is not so harsh as to be unreasonable, and the collection remedy is related both to the tax on the purchase or use of a motor vehicle and to the use of the revenues raised by the tax for highway purposes.

Accordingly, plaintiffs' motion for summary judgment is denied, and defendant's motion is granted. The temporary restraining orders in effect are hereby dissolved. Let the Clerk enter judgment for the defendant without costs.