Charles M. **WRIGHT**, on behalf of himself and all others similarly situated, and Thomas Matthews et al., Intervening Plaintiffs,

v.

James E. **MALLOY**, Commissioner, Vermont Department of Motor Vehicles.

Civ. A. No. 6758.

United States District Court, D. Vermont.

March 25, 1974.

Atty. Kathleen M. Mitchell, Vermont Legal Aid, Inc., Springfield, Vt., and J. Morris Clark, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiff Charles M. Wright and plaintiff intervenor Thomas Matthews.

A. Jeffry Taylor, Rutland, Vt., for plaintiff intervenor Jacques G. Bernard.

Peter E. Piche, Piche & Gedulig, Burlington, Vt., for plaintiff intervenor David J. Hance.

William O. Wuester, Asst. Atty. Gen., Montpelier, Vt., for defendant.

Before OAKES, Circuit Judge, HOLDEN, Chief District Judge, and COFFRIN, District Judge.

COFFRIN, District Judge.

This is an action brought under 42 U. S.C. § 1983 (1970). Plaintiffs, each of whom has been convicted of a motor vehicle violation indicating fault arising out of an accident, seek to enjoin the defendant Commissioner of Motor Vehicles for the State of Vermont from suspending their operator's licenses for failure to furnish proof of financial responsibility to satisfy any claim for damages which might arise out of the accident for which they have been convicted. The authority vested in the Commissioner to require proof of financial responsibility of the plaintiffs in these circumstances is contained in 23 V.S.A. § 801(a)(4)(Supp.1973).[1] The authority

---

1. § 801. *Proof of financial responsibility required*

(a) The Commissioner shall require proof of financial responsibility to satisfy any claim for damages, by reason of personal injury to or the death of any person, of at least $10,000.00 for one person and $20,000.00 for two or more persons killed or injured and $5,000.00 for damages to property in any one accident, as follows:

\* \* \* \* \*

(4) From the operator of a motor vehicle involved in an accident, when such operator is found to be operating a motor vehicle at the time of such accident in violation of any of the provisions of this title and is convicted of such violation, which indicates he was at fault in any degree, or if no indication of fault, a hearing is held, if requested, as provided under 23 V.S.A. § 802(i), who fails to file with the commissioner evidence that the required liability insurance was in full force and effect at the time of such accident. In addition such operator shall be required to furnish a written release from all persons injured in person or property as a result of such accident or to furnish sufficient security, in the form of a bond of a surety company authorized to transact business in this state, which bond shall be conditioned for the payment of such amount as the commissioner may deem necessary in view of the damages as estimated by him, but in no case in excess of the amount required under the section with respect to proof of financial responsibility, to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such operator by or on behalf of the aggrieved person or his legal representative in an action of law, in a court of this state, begun not later than one year from the date of the ac-

of the Commissioner to suspend the licenses of the plaintiffs for failure to satisfy the requirement of § 801(a)(4) is found in 23 V.S.A. § 802 (Supp.1973).[2]

cident. Such security shall be released, whenever, after the expiration of such year, the commissioner shall be given satisfactory evidence that there is no such action pending and no such judgment unsatisfied.

2. § 802. Suspension of license

(a) Proof of financial responsibility shall cover a person in the operation of any and all motor vehicles operated by him. If he fails to furnish such proof and to furnish security, when required under the provisions of paragraphs (3) and (4) of subsection (a) and subsections (b) and (c) of section 801 of this title, within twenty days after notice from the commissioner is mailed to him, until such proof and such security, if required, are furnished, the commissioner shall suspend the license of such person, or if such person is not a resident of this state, suspend the right of such person to operate any motor vehicle in this state. A person who has been notified to file such proof of financial responsibility, or such proof and such security, shall be entitled to hearing as provided in sections 105–107 of this title, as soon as may be after petition therefore, to be held at such time and place as the commissioner may determine. It shall be within the discretion of the commissioner to grant subsequent hearings to the petitioner.

(b) When a person is required to furnish such security, such suspension shall remain in force and such person shall not be entitled to a new license or to a renewal of his license unless and until he obtains a release, or a judgment in his favor in an action at law to recover damages to property or for the death or bodily injury to any person resulting from such accident, from each person deemed by the commissioner to have suffered such damage in such accident through the fault of such person, or unless he shall have satisfied in the manner hereinafter provided any judgment rendered against him in such an action, and in any event gives and thereafter maintains, subject to the provisions of section 809 of this title, proof of his financial responsibility. If no aggrieved or injured person or his legal representative shall have brought suit within one year from the date of the accident, then the commissioner, upon receiving reasonable evidence of the fact, subject to the other requirements of the law, may issue to such person a new license to operate, provided he shall give and thereafter maintain proof of financial responsibility. (A discharge in bankruptcy shall not relieve a judgment debtor from any of the requirements of this section.)

(c) When a resident of Vermont, or a person holding a Vermont operator's license, as a result of a motor vehicle accident in any other state has been required to furnish such other state with evidence of future financial responsibility and because of failure so to do has had his operating privilege suspended or revoked therefor, upon being notified by the proper official of such other jurisdiction of such suspension or revocation, the commissioner of motor vehicles shall suspend the Vermont operator's license or right of such person to operate motor vehicles, and such suspension shall remain in effect until the person suspended shall furnish the commissioner with satisfactory evidence that he has complied with the requirement to furnish such other state with evidence of future financial responsibility.

(d) Every judgment herein referred to, for the purpose of this chapter, shall be deemed satisfied:

(1) When $10,000.00 has been credited upon any judgment or judgments rendered in excess of that amount because of bodily injury to or death of any one person as the result of any one accident; or

(2) When, subject to such limit of $10,000.00, because of bodily injury to or death of one person, the sum of $20,000.00 has been credited upon any judgment or judgments rendered in excess of that amount because of bodily injury to or death of two or more persons as the result of any one accident; or

(3) When $5,000.00 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to or destruction of property of others as a result of any one accident.

(e) Credit for the amounts mentioned in subsection (d) shall be deemed a satisfaction of any such judgment or judgments in excess of such amounts only for the purpose of this section. A judgment creditor may accept payment of an amount tendered for the purpose of this section without prejudice to any other legal remedies he may have or had for enforcing his judgment. Payments made in settlement of any claims because of bodily injury, death or property damage arising from a motor vehicle accident shall be credited in reduction of the amounts provided for in this section.

(f) The commissioner shall restore any license when the judgment debtor gives proof of his financial responsibility in the future and when the judgment debtor obtains an order from the trial court in which such judgment was rendered, permitting the payment of such judgment in installments, and while the payment of any such installment is not in default.

The plaintiffs were involved in separate automobile accidents out of which motor vehicle violation charges were brought against them. Each plaintiff pleaded nolo contendere to the charges and, since none of them was covered by a liability insurance policy at the time of the accident, the Commissioner required them to file proof of financial responsibility and upon their failure or inability to do so took steps to suspend their licenses. In order to retain their licenses the financial responsibility statute requires the plaintiffs to obtain a policy of automobile liability insurance to cover them against future accidents and either a written release from all persons who sustained damages as the result of the accident in which they were involved or a security deposit adequate to satisfy any judgment for damages as the Commissioner determines may be recovered against the operator as the result of the accident. Once a person's license has been suspended under Vermont's Financial Responsibility Law it remains suspended until the obligation of the operator is satisfied in one of the three following ways. First, the operator obtains releases from or a favorable judgment against all persons deemed by the Commissioner to have suffered damages as a result of the accident. Second, the operator satisfies any judgment rendered against him for damages arising out of the accident. Third, no action is brought against the operator by any injured person or his legal representatives within one year from the date of the accident. Upon reinstatement of his license in any one of the above ways the operator is required to maintain proof of his financial responsibility until relieved by the Commissioner

(g) A judgment debtor, upon five days' notice to the judgment creditor, may apply to the trial court in which such judgment was obtained for the privilege of paying such judgment in installments and the court, in its discretion and without prejudice to any other legal remedies which the judgment creditor may have, may so order, fixing the amounts and times of payment of the installments.

(h) In the event the judgment debtor fails to pay any installment as directed by the order of the court, then upon notice of such default, the commissioner shall forthwith suspend the license of the judgment debtor until such judgment is satisfied as provided in this section. However, if the judgment creditor consents in writing, in such form as the commissioner may prescribe, that the judgment debtor be granted a license, the same may be granted by the commissioner, notwithstanding default in the payment of such judgment or of any installment thereof, for six months from the date of such consent and thereafter until such consent is revoked in writing, if the judgment debtor gives and thereafter maintains proof of his financial responsibility in the future.

(i) No proof of financial responsibility shall be required, under subsection 801(a)(3), and no license shall be suspended under that subsection, unless the operator whose license or right to operate motor vehicles is subject to suspension has been afforded the opportunity of a hearing to determine whether such operator was, in any degree, at fault for the accident, injury or damage in question. If the operator requests a hearing, and appears at the time and place provided, the commissioner or his duly appointed representative shall conduct a hearing, make findings and render a decision thereon. The hearing officer may consider such evidence as is offered and may consider also the operator and investigating officer report or reports filed in connection with the accident, injury or damages. If the decision of the hearing officer finds the operator to be at fault in any degree, then such person shall be required to provide proof of financial responsibility under this subchapter and, if he fails to do so, his license or right to operate a motor vehicle shall be suspended. A person found to be at fault may have such finding reviewed under Rule 75 of the Vermont Rules of Civil Procedure. No findings made under this subsection, whether by the hearing officer or by a court on review, shall be used in any way in any litigation, whether civil or criminal, arising out of the accident, injury or damage. The hearings provided for herein shall be conducted in the administrative district in which the person resides, or if a nonresident, the hearing will be held in Montpelier. Hearings shall be conducted with a minimum of procedural requirements, so as to provide persons an opportunity to be heard without delay and at reasonable expense to them and to the state.

of that requirement by one of the statutorily enumerated means.[3]

The plaintiffs seek to have us declare 23 V.S.A. § 801(a)(4) (Supp.1973) unconstitutional, principally on due process and equal protection grounds. Their challenge is five fold. First, they claim that the statute is unconstitutional because it provides no hearing prior to license suspension on the question whether there is a reasonable possibility of a judgment resulting from the accident being rendered against them. Second, plaintiffs claim that the statute arbitrarily discriminates between those convicted of a motor vehicle violation and those persons at fault in an accident but not convicted of a violation. Third, plaintiffs contend that a hearing should be provided on the amount of security required of those at fault in an accident. Fourth, plaintiffs challenge the requirement of posting security for past accidents as unjustified by any compelling state interest and therefore violative of the Fourteenth Amendment. Finally, the statutory scheme is challenged as improperly preferring a single class of potential creditors.

This court is vested with jurisdiction by virtue of 28 U.S.C. § 1343(3).

I. PLAINTIFFS' CLAIM THAT DUE PROCESS IS DENIED THEM WITHOUT A SEPARATE AND INDEPENDENT DETERMINATION OF FAULT.

■ The purpose of the Vermont Financial Responsibility Act is to protect the public and ensure that those motor vehicle operators who cause accidents for which they are liable have adequate resources to satisfy any claims which arise therefrom. Miller v. Malloy, 343 F.Supp. 46 (D.Vt.1972); McNamara v. Malloy, 337 F.Supp. 732 (D.Vt.1971). As the late Chief Judge Leddy said in *McNamara* "this legislative purpose is both laudatory and, in and of itself not constitutionally impermissible." 337 F.Supp. at 736. Judge Leddy then determined that the Vermont act relied upon fault related concepts and 23 V.S.A. § 801(a)(3)[4] as then enacted was constitu-

---

3. § 809. *Waiver of proof of financial responsibility*

The commissioner may relieve an operator from the obligation to furnish proof of financial responsibility after three years, provided that:

(1) The operator has not been convicted of a moving violation under the motor vehicle laws during that time;

(2) The operator has no suit or judgment arising out of the operation of a motor vehicle then outstanding against him; and

(3) The operator has not suffered a suspension or revocation of his license or right to operate a motor vehicle, except a suspension for delinquent poll taxes under section 604 of this title or a suspension for receipt of town assistance upon written notice of an overseer of the poor under section 673 of this title.

4. § 801. *Proof of financial responsibility required*

(a) The commissioner shall require proof of financial responsibility to satisfy any claim for damages, by reason of personal injury to or the death of any person, of at least $10,000.00 for one person and $20,000.-00 for two or more persons killed or injured and $5,000.00 for damages to property in any one accident, as follows:

\* \* \* \* \*

(3) From the operator of a motor vehicle involved in an accident which has resulted in bodily injury or death to any person or whereby the motor vehicle then under his control or any other property is damaged in an aggregate amount to the extent of $35.00 or more excepting, however, an operator furnishing the commissioner with satisfactory proof that a standard provisions automobile liability insurance policy, issued by an insurance company authorized to transact business in this state insuring such person against public liability and property damage, in the amounts required under the section with respect to proof of financial responsibility, was in full force and effect at the *time of the accident, or if such operator was* a nonresident, holding a valid license issued by the state of his residence, at the time of the accident, satisfactory proof, in the form of a certificate issued by an insurance company authorized to transact business in the state of his residence, when accompanied by a power of attorney authorizing the commissioner to accept service on its behalf of notice or process in any action upon such policy arising out of such accident, certifying that insurance covering the legal liability of such operator to satisfy any claim or claims for damage to person or property, in an

tionally infirm under the authority of Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), for failing to provide a hearing prior to license suspension for those operators involved in an accident who were unable to furnish proof of financial responsibility.

Following the *McNamara* decision, the 1971 legislature amended 23 V.S.A. §§ 801(a)(1)(A) and (a)(3)[5] to require proof of financial responsibility only upon the determination of fault by the Commissioner after due notice and hearing. At the same time, the statute challenged in this action was amended to provide for a hearing with reference to fault if the operator's conviction for the motor vehicle violation arising out of the accident does not indicate that he was at fault in any degree. If the conviction indicates fault, the operator is required to file proof of future financial responsibility and suffer the loss of his license without an independent hearing as to such fault. It is this failure to provide an independent determination of fault by way of a hearing on which we

conceive the plaintiffs' principal claim that the statute is unconstitutional to be based.

Accordingly, we first take up plaintiffs' claim that the absence of a pre-suspension hearing constitutes a denial of due process and a violation of the Fourteenth Amendment. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), was the precursor of this and many other suits challenging financial responsibility laws in many states. There, the Supreme Court held that a Georgia statute that provided an administrative hearing prior to suspension, but limited the evidence allowable in the hearing to questions whether the petitioner or his vehicle was involved in the accident, whether the petitioner had complied with the provisions of the law, and whether the petitioner came within any exceptions of the law, was an unconstitutional denial of due process in that it excluded evidence of fault or liability when the entire statutory scheme was based on those concepts. The Court held that an operator's license, once issued,

amount equal to the amounts required under the section with respect to proof of financial responsibility, was in full force and effect at the time of the accident;

5. § 801. Proof of financial responsibility required

(a) The commissioner shall require proof of financial responsibility to satisfy any claim for damages, by reason of personal injury to or the death of any person, of at least $10,000.00 for one person and $20,000.00 for two or more persons killed or injured and $5,000.00 for damages to property in any one accident, as follows:

 (1) From a person who is convicted of any of the following violations of this title:

 (A) Death resulting from:

 1. Careless and negligent operation of a motor vehicle, or

 · 2. Reckless driving of a motor vehicle.

 \* \* \* \* \*

 (3) From the operator of a motor vehicle involved in an accident for which he was wholly or partially at fault as determined by the commissioner after due notice and hearing if requested under and subject to Title 3, chapter 25 notwithstanding section 816(b) of Title 3 and which has resulted in bodily injury or death to any person or whereby the

motor vehicle then under his control or any other property is damaged in an aggregate amount to the extent of $100.00 or more excepting, however, an operator furnishing the commissioner with satisfactory proof that a standard provisions automobile liability insurance policy, issued by an insurance company authorized to transact business in this state insuring such person against public liability and property damage, in the amounts required under the section with respect to proof of financial responsibility, was in full force and effect at the time of the accident, or if such operator was a nonresident, holding a valid license issued by the state of his residence, at the time of the accident, satisfactory proof, in the form of a certificate issued by an insurance company authorized to transact business in the state of his residence, when accompanied by a power of attorney authorizing the commissioner to accept service on its behalf of notice or process in any action upon such policy arising out of such accident, certifying that insurance covering the legal liability of such operator to satisfy any claim or claims for damage to person or property, in an amount equal to the amounts required under the section with respect to proof of financial responsibility, was in full force and effect at the time of the accident.

was an important interest of the licensee and could not be taken away without the procedural due process required by the Fourteenth Amendment. 402 U.S. at 539, 91 S.Ct. 1586, 29 L.Ed.2d 90. The Court also stated:

> Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural due process will be satisfied by an inquiry limited to the determination *whether there is a reasonable possibility of judgments* in the amounts claimed being rendered against the licensee. (emphasis added). 402 U.S. at 540, 91 S.Ct. at 1590.

Where a state's statutory scheme such as Vermont's is based on fault, before an operator's license may be suspended, the Supreme Court's holding in *Bell* requires that the State provide him with an opportunity to be heard on the question of whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident.

Section 801(a)(3) provides a hearing for those drivers who were allegedly at fault in an accident but were not convicted of a motor vehicle violation. Likewise § 801(a)(4) provides a hearing for those drivers convicted of a motor vehicle violation that does not indicate fault. It is only in the instance of an operator convicted of a motor vehicle violation indicating fault for the accident in which he was involved that the provisions of § 801(a)(4) do not provide for an independent hearing on the question of fault. It is reasonable to assume that the legislature felt that a further hearing was unnecessary when the opportunity to contest fault was afforded the driver by the nature of the plea which he entered to the charges brought against him. A plea of not guilty would earn such an operator the right to be heard by the court with undoubted procedural and substantive due process rights. On the other hand, a plea of guilty or nolo contendere to the violation indicates that the operator either declines to contest the question of fault or that he indeed was at fault to some degree which he is willing to admit. *Bell* does not require that a hearing be held in all cases in which proof of financial responsibility is sought by the Commissioner but merely that there is a forum where the motorist may have the question of probability of fault determined before he is made to suffer suspension of his license for failing to establish his financial responsibility. The Vermont scheme under 801(a)(4) leaves it to the motor vehicle driver to elect whether he wishes to take advantage of the procedures allowed by the court of law in which he finds himself in determining his fault for the accident or accept, by not contesting the charges, that he indeed was at fault for purposes of the financial responsibility law. The choice of how to proceed is that of the motorist, not that of the Commissioner. We conceive that it makes little difference where or when the operator makes his choice, as long as, at some point prior to the possibility of license suspension, he is provided with a forum in which to make that choice. Nor do we see that it makes any difference that the Commissioner's determination of fault and a possible adverse judgment in the civil liability action is made as the result of an independent opportunity for the motorist to be heard by the Commissioner or follows as the result of proceedings held in a court of law. The determination which the Commissioner is required to make can be made equally well from the results obtained from either source.

■ Plaintiffs point out that Vermont has a comparative negligence law, 12 V.S.A. § 1036 (1973) as a result of which the reasonable possibility of a verdict against a negligent motorist is rendered complex and difficult to determine.

> Clearly, however, the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liability. That adjudication can only be made in the litigation

between the parties involved in the accident. Bell v. Burson, *supra,* 402 U. S. at 540, 91 S.Ct. at 1590.

In determining the possibility of a judgment arising out of a motor vehicle accident, the Commissioner need not decide on a comparative negligence basis which of the two operators is less at fault than the other and hence more likely to recover; it is sufficient that he determine that there is a reasonable possibility that under comparative negligence principles either driver might recover against the other.

We hold that the procedural due process test laid down in *Bell* is satisfied by the opportunity granted the driver to contest his fault by contesting the violation with which he is charged and that a determination by the defendant Commissioner of Motor Vehicles that there is a reasonable possibility of a judgment being rendered against the licensee may be based upon the fact that the fault of the licensee has been determined by conviction upon the motor vehicle violation with which he was charged.

## II. PLAINTIFFS' CLAIM OF DISCRIMINATION BETWEEN PERSONS CONVICTED OF MOTOR VEHICLE VIOLATIONS AND THOSE AT FAULT BUT NOT CONVICTED.

Plaintiffs further contend that 23 V.S.A. § 801(a)(4) arbitrarily discriminates against persons convicted of a motor vehicle violation and, as an arbitrary and capricious classification, it violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs point out that 23 V.S.A. § 801(a)(3) provides for hearings for those persons who may be at fault in an accident but are not convicted of a motor vehicle violation. However, as discussed above, a defendant charged with a motor vehicle violation is afforded a hearing in a court of law and those results are as fully de-terminative of his right as a hearing granted to a motorist involved in an accident who was not charged with a violation. The rights of each class of motor vehicle operators are identical —only the forum in which those rights are exercised is different. In the case at hand, plaintiffs had their opportunity for a hearing but chose not to exercise it. If the State decides to avoid the burden and expense of offering a person convicted of a violation a duplicative hearing, such a decision does not discriminate against those persons convicted. "A statutory discrimination will not be set aside if any state of facts reasonably may be concerned to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). *See also* Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 55 L.Ed. 369 (1911).

Plaintiffs challenge the Vermont Financial Responsibility Act on the further ground that it discriminates against persons who cannot afford to pay the security deposit adequate to satisfy damages for the prior accident which if paid would enable them to retain their operator's license, thereby setting up an improper classification based on wealth. However, neither wealth nor poverty alone set up a suspect classification without more. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1245, 36 L.Ed.2d 113 (1973). Thus, a classification by wealth, unlike one by race, lineage, and alienage, will not trigger the "strict scrutiny" of a statute by the courts. *See, e. g.,* Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Further, as we have seen, it is the fault of the operator, not the question of his wealth, which requires the suspension of his license if he cannot post security (or obtain releases from those involved in the accident) and it is a legitimate state interest to see that "those who cause accidents will have the resources to satisfy any claim for which they are liable."

McNamara v. Malloy, *supra*, 337 F.Supp. at 736.[6]

### III. PLAINTIFFS' CLAIM THAT THE REQUIREMENT OF SECURITY FOR PAST ACCIDENTS VIOLATES THE FOURTEENTH AMENDMENT.

 Plaintiffs contend that since the right to a driver's license has been held to be a fundamental right in Vermont, Miller v. Malloy, 343 F.Supp. 46, 50 (D.Vt.1972), the statute under challenge here must fall because the State can show no compelling interest for the requirement of security for past accidents. However, the State does have a compelling interest in reducing "the imposition of financial disaster on the general public that may be injured through the negligence or recklessness of financially insecure and uninsured motor vehicle operators." Miller v. Malloy, 343 F.Supp. 46, 51 (D.Vt.1972). To that end it could, if it wished, refuse to issue licenses to motorists who did not carry liability insurance or post security. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). Nevertheless, having issued operators' licenses it cannot proceed to take them away without providing the licensees with Fourteenth Amendment due process. Bell v. Burson, *supra*, 402 U.S. at 539, 91 S.Ct. 1586, 29 L.Ed.2d 90. Notice and "a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him (the operator) as a result of the accident," *Bell* at 542, 91 S.Ct. at 1591, is adequate compliance with the constitutional due process mandate.

Squarely before the Court in *Bell* was the Georgia Motor Vehicle Responsibility Act requiring license suspension of a motorist involved in an accident unless he posts security adequate to respond to the claim for damages of the injured party. Although apparently no equal protection arguments were made below [7] the court in concluding its opinion indicates a variety of ways in which Georgia could cure the due process deficiency of its statute.

Nor does Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), provide the support for plaintiffs' equal protection position that they claim for it. *Perez* goes no further than to hold that a state financial responsibility statute which provides that a discharge in bankruptcy of an unsatisfied judgment does not relieve the judgment debtor of the necessity of complying with the provisions of the Act is unconstitutionally in conflict under the Supremacy clause with the Federal Bankruptcy Act. No such provision as was struck down in *Perez* is contained in the Vermont Act nor do the provisions of the Vermont Act frustrate the operation of any federal law presently enacted. The Vermont Act, as this Court has said, is designed for the financial protection of the general public. It is a legitimate State concern to require the motorist who elects to drive upon its highways to provide the means to satisfy any judgment arising from the negligent operation of his motor vehicle. The general public is entitled to know that it has the benefit of this protection by those who use the highways. The motorist who chooses to drive should know that he assumes the requirement of satisfying the judgments recovered by those he may injure. He should know that as a prerequisite to keeping his license following an accident in which he was at fault he must have the financial means from some source to meet the obligations imposed upon him by an adverse judgment. He may elect

---

6. Strictly speaking the classification is not one of wealth in any event but one based on financial responsibility. Wealth undoubtedly is of assistance in making a person financially responsible but circumstances can be conceived wherein a poor person might be financially responsible and a wealthy person financially irresponsible.

7. 402 U.S. at 540 n. 4, 91 S.Ct. 1586, 29 L.Ed.2d 90.

to carry liability insurance with required limits prior to the time that it may become necessary to satisfy any such judgment and thus retain his license. He may elect not to carry insurance but if he does so and has an accident he must, among other things, post security of an amount adequate, as specified by the statute, to respond to any judgment obtained against him. It is difficult to perceive of any reason why the state should not enact legislation designed to encourage financial protection of injured highway users and indeed we find that it has a compelling interest to do so.

The great majority of cases fortify the conclusion we have reached[8] and those cited by the plaintiffs to the contrary[9] are distinguishable upon their facts and the language of the statute being construed.

## IV. PLAINTIFFS' CLAIM THAT THE STATUTE IMPROPERLY PREFERS A SINGLE CLASS OF POTENTIAL CREDITORS.

■ Plaintiffs further contend that the Vermont statute is unconstitutional because it requires license suspension of one class of potential debtors, those involved in motor vehicle accidents who may be liable, and does not require suspension for other classes of potential debtors. The plaintiffs contend that Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), and James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), are applicable. In *Rinaldi,* the State required only incarcerated prisoners to pay for their appeal transcripts, while in *James,* indigents required to repay the State for their appointed counsel were denied the exemptions afforded other civil debtors. Neither of these fact situations are applicable here. The Supreme Court has chosen not to rule procedures similar to Vermont's suspension for failure to post bond or file releases unconstitutional. Bell v. Burson, *supra*; Perez v. Campbell, *supra*. In James v. Strange, the Court reaffirmed its statement in *Rinaldi* that, "the Equal Protection Clause imposes a requirement of some rationality in the nature of the class singled out." 407 U.S. at 140, 92 S.Ct. at 2034, citing 384 U.S. at 308–309, 86 S.Ct. 1497, 16 L.Ed.2d 577. As previously indicated, we believe that Vermont's statutory scheme evidences the rationality demanded by *James* and thus we reject plaintiffs' claim that the statute improperly prefers a single class of potential creditors.

## V. PLAINTIFFS' CLAIM THAT FAILURE TO PROVIDE A HEARING ON THE AMOUNT OF SECURITY REQUIRED RENDERS THE STATUTE UNCONSTITUTIONAL.

■ Although, as discussed above, the statute withstands plaintiffs' constitutional challenges on all other grounds, we nevertheless find that it impermissibly violates procedural due process in failing to provide a hearing on the amount of security required to be posted by the operator involved. In this regard we find Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), cited by the plaintiffs to be inapposite and we do not rely thereon in reaching our conclusion. *Lindsey* merely holds that a double-bond required on appeal by the Oregon Forceful Entry and Detainer statute violates due process when the

---

8. *E. g.*, Miller v. Malloy, 343 F.Supp. 46 (D. Vt.1972); McNamara v. Malloy, 337 F.Supp. 732 (D.Vt.1971); Rivas v. Cozens, 327 F. Supp. 867 (N.D.Cal.1971); Trujillo v. De-Baca, 320 F.Supp. 1038 (D.N.M.1970); Perez v. Tynan, 307 F.Supp. 1235 (D.Conn. 1969); Llamas v. Department of Transportation, Division of Motor Vehicles, 320 F. Supp. 1041 (E.D.Wis.1969).

9. Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 33 (1971); Gulf, Colo. & S. F. Ry. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1896); Miller v. Dupuy, 307 F.Supp. 166 (E.D.Pa.1969); People v. Nothaus, 147 Colo. 210, 363 P.2d 180 (1961).

amount thereof is unrelated to the actual rent accrued or to the specific damages sustained by the landlord. In the instant case the examiner in the motor vehicle department does not set the security required at an arbitrary figure but rather sets a discretionary amount based upon damage figures and descriptions of personal injury contained in police and motorist accident reports as well as the number of injured persons involved and the damage figure claimed by a victim who refuses to sign a release. Assuming the criteria are valid and they are applied in a rational and logical manner as we find to be the situation, we find the arbitrary security request struck down in *Lindsey* to be lacking here.

Also lacking, however, is any right of the involved driver to contest an abuse of discretion, whether intentional or unintentional, on the part of the examiner or to call to his attention that the data used was improper for whatever reason or to demonstrate that the conclusion reached was not borne out by the facts. Only the judgment rendered in such civil action as may follow an accident fixes the damage of the injured parties with exactitude, but we conceive that it is an important part of due process to allow a person faced with the deprivation of his motor vehicle operator's license to be allowed a say as to the amount of the damages arising from the accident as he considers them to be or likely to be.

The same conclusion recently was reached by this Court in Lee v. Thornton, 370 F.Supp. 312 (D.Vt.1974) wherein we determined that Bell v. Burson, *supra*, required a hearing "both to determine the probability of judgments being had *and* that the amount of the bond, if required at all, be reasonable relative to whatever judgment might finally become due." Id. 370 F.Supp. at 320.

*Bell*, to be sure, did not question the Georgia procedure for determining the amount of security required (which from the limited facts would appear to be very similar to that of Vermont) but the issue does not seem to have been raised in that case. In fact, the victim's parents filed an accident report claiming injuries in the amount of $5,000 and the Department of Public Safety required a bond of $5,000 from the operator. Had the question as to whether due process required a hearing on the amount of the bond arisen, we are satisfied that the Court would have held that such a hearing was required.

Accordingly, it is hereby declared that 23 V.S.A. § 801(a)(4) (Supp.1973), insofar as it permits the setting of security without a hearing to determine the amount of security, and 23 V.S.A. § 802(a), insofar as it is used to enforce § 801(a)(4) without any hearing on the amount of security, are unconstitutional because they violate the due process clause of the Fourteenth Amendment of the United States Constitution.

Wherefore, it is hereby ordered:

That defendant be and he hereby is enjoined from withholding the licenses of plaintiffs and the class whom they represent without affording them a hearing as provided above.