

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

October 14, 1993

Mr. James R. Wilson
Director
Texas Department of Public Safety
5805 North Lamar Boulevard
Box 4087
Austin, Texas 78773-0001

Opinion No. DM-261

Re: Constitutionality of provisions of section 4A, V.T.C.S. article 6701h, pertaining to impoundment of out-of-state vehicles involved in accidents where proof of financial responsibility is not shown, and related questions (RQ-419)

Dear Mr. Wilson:

You ask about the Safety Responsibility Law, article 6701h, V.T.C.S., which generally requires that operators of motor vehicles in Texas be able to furnish proof of "financial responsibility," that is, liability insurance or other proof as provided for in the act, of the operator's ability to respond in damages for liability arising from ownership, maintenance, or use of the motor vehicle. *See* V.T.C.S. art. 6701h, §§ 1 (definitions), 1A (necessity of liability insurance, with exceptions), 1B (furnishing evidence of financial responsibility). Your questions relate to the provisions of section 4A of the act, which pertain to persons who own or operate motor vehicles which are involved in accidents in this state but which are not registered in this state.

Section 4A provides that when such an accident results in injury or death, or in property damage to any person to "an apparent extent of $500 or more," the owner or operator, upon his failure to furnish evidence of "financial responsibility" to an investigating law enforcement officer, shall be taken before a magistrate. *Id.* § 4A(a), (b). The latter, upon finding in a hearing a reasonable possibility of a judgment being rendered against the person for damages arising from the accident, must order the vehicle impounded by the sheriff or chief of police unless the person shows evidence of "financial responsibility" for such damages or evidence that he is exempt from the "financial responsibility" requirements of the act. *Id.* § 4A(a)(c) - (e). (Section 1A(b) includes exemptions for certain public vehicles, vehicles for which bonds or cash deposits have been filed, self-insured vehicles, certain older collectors' vehicles, implements of husbandry, golf carts, etc.) The owner or operator may secure release of a vehicle thus impounded only upon obtaining a "certificate of release" from the Department of Public Safety (the "department") and paying the "cost of impoundment." *Id.* § 4A(f). Subsection (g) of section 4A provides that the department shall issue such certificate of release on submission to it of 1) evidence of financial responsibility or exemption from the requirement; 2) a release from each person who was damaged in the accident other than

the one seeking the certificate of release; or 3) "security in a form and amount determined by the Department to secure the payment of any damages for which the operator may be liable." The department is to determine "the form, content and procedures for the issuance of a certificate of release." *Id.* § 4A(i).

Your specific questions are:

1.  Does Section 4A, Article 6701h, V.T.C.S., violate the constitutional provisions relating to equal protection or the commerce clause.

2.  Does the duty of the Department of Public Safety under Section 4A, Article 6701h, to issue a certificate of release and to determine the amount of security to be posted by a vehicle owner or operator require a prior hearing under Article 6252-13a, V.T.C.S. (Administrative Procedure and Texas Register Act)?

3.  What is the minimum amount of security which the Department may require in order to issue a certificate of release under Section 4A, Article 6701h?

4.  What standards should the Department apply in determining the amount of security that is required by the Department?

You suggest that the impoundment of vehicles involved in accidents in but not registered in Texas, and for which no proof of financial responsibility is shown, is a potentially harsh remedy:

> It is clear that the procedures set forth in Section 4A could present a lengthy delay and possibly great expense on the owner or operator of the vehicle which is not registered in Texas . . . . The vacationing family could be without use of its vehicle for an extended period of time. If a commercial motor vehicle was carrying a load of perishable goods, a potentially even greater financial burden might be imposed . . . . None of these provisions would apply to a vehicle registered in Texas.

The constitutional issues you raise in your first question involve whether the differing treatment afforded with respect to vehicles not registered in Texas when involved in accidents for which proof of financial responsibility is not shown--*i.e.*, impoundment under the procedures set out in section 4A--is warranted. Indeed, section 4A's provisions are directed only against owners or operators of vehicles not registered in Texas. The parts of article 6701h which contain counterpart security provisions applicable to Texas registered vehicles are in sections 5 through 7A. Section 5, applicable to all vehicles involved in accidents here resulting in $1000 or more in damages, provides for suspension

of the operator's license and vehicle registration, "and if such operator or owner is a nonresident the privilege of operating a motor vehicle within this State, and the privilege of the use within this State of any vehicle owned by him," unless or until "security that will be sufficient to satisfy any judgment or judgements," is deposited. Section 5 makes detailed provision for notice, hearing, and the issues to be determined relative to the suspensions of licenses, registrations and privileges thereunder. Section 7 provides for reinstatement of such licenses, registrations, and privileges upon posting of security or presentation of evidence of release from liability, adjudication of non-liability, or an agreement for installment payments of damages—but in no event later than two years after the accident if no action for damages has been instituted. *See also id.* § 8(b), providing for notification of state of non-resident whose Texas operating privileges are suspended if such state provides for suspension of such person's license and registration upon such notification, as Texas does with respect to its residents under section 8(c).[1]

Attorney General Opinion JM-826 (1987), in concluding, that the requirement of article 6701h that out-of-state motorists be able to furnish proof of financial responsibility in the same measure as residents does not violate the commerce clause, article 1, section 8, clause 3 of the federal constitution,[2] noted that state legislation pertaining to highways and traffic carries a strong presumption of validity. The opinion and the cases it relied on, however, stressed the significance of such legislation's treating intrastate and interstate traffic alike in opining as to its validity. *See, e.g., Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520 (1959).

Clearly, the suspension of the license and registration of a Texas resident in circumstances where it is likely there will be liability is a more effective incentive to the Texas resident to provide security therefor than the suspension of the non-resident's "operating privilege." Notably, the bill analysis to the bill adopting the provisions of

---

[1]There are, in section 1F, penal provisions for the impoundment of vehicles upon multiple convictions for failure to furnish proof of financial responsibility, as well as for license and registration suspension. *See also id.* § 1C (setting out basic penal provisions for fines and costs for first and subsequent offenses of failure to show proof of financial responsibility). Section 1F's provisions are applicable to all vehicles whether Texas registered or not, but they clearly differ in their purpose from those in section 4A, being of a penal rather than security nature. The offense addressed in section 1F is the failure to show proof of financial responsibility after a prior conviction or convictions for same. The section limits the period of impoundment to 180 days unless the driver remains unable to show proof of financial responsibility for the future. Posting of a monetary amount is not a means of obtaining the release of a vehicle impounded under section 1F.

[2]We also note that Attorney General Opinion JM-546 (1986) concluded that a previous version of section 4A was unconstitutional for not affording due process. That version of section 4A applied only to operators of vehicles in Texas who were not United States domiciliaries. The defect in the section that opinion focussed on, the lack of provision for a hearing prior to impoundment of a vehicle operated by such a person here and involved in an accident resulting in damage to an apparent extent of $100 or more, was remedied in the current version of section 4A. *See id.* § 4A(b) - (e).

section 4A in 1991 characterize the problem of the state's not being able under the then current law to impose "any enforceable responsibility" on uninsured out-of-state drivers causing damages in accidents as a "serious" one. *See* House Insurance Comm., Bill Analysis, H.B. 595, 72d Leg. (1991). Arguably, the impoundment of out-of-state vehicles, as a general matter under such circumstances is a reasonable means of addressing this imbalance.

That said, we concede the treatment afforded under section 4A to vehicles not registered in Texas may be especially troubling in particular applications. For example--the matter to which your second question relates--while the provisions of section 5 of the act for the suspension of a Texas owner/operator's license and registration only apply where there has been $1000 or more in damage from an accident, the impoundment procedures under section 4A are triggered when there has been damage "to an apparent extent of $500 or more." It would appear, however, that the minimum security which must be posted, pursuant to section 9, for the reinstatement of registration and license under section 5 or the release of an impounded vehicle under section 4A is the same: $1000. Whether this provision for the posting of $1000 when the apparent damages involved were only $500 was an oversight on the part of the legislature or was motivated by legitimate concerns, we have been unable to determine. Also, the limited ways by which the release of the impounded vehicle may be obtained--presenting proof of financial responsibility effective at the time of the accident, payment of security, or securing a release from the persons damaged--may in particular cases mean that the vehicle will remain impounded indefinitely. Compare section 7, which provides for reinstatement of a Texas license and registration suspended under section 5 two years after the accident if no action for damages has been instituted.

However, we do not find cases or authorities which we believe enable us to resolve your question as to the constitutionality of the article 6701h provisions at issue here as a matter of law. We think it clear that were a court to entertain this question, it would take evidence to determine the weight to be accorded the various interests involved. That would be the case, we think, even if a "strict scrutiny" level of analysis were applied, on an equal protection theory that section 4A burdened a fundamental right, the "right to travel," or a "suspect class," non-residents. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618 (1968); *Plyler v. Doe,* 457 U.S. 202 (1982). Moreover, whether particular applications of section 4A would run afoul of constitutional safeguards can only, we think, be determined on a cases by case basis, again with a full taking of evidence and finding of facts relevant to the particular case.

We have stated before that constitutional questions which involve a weighing of opposing interests may not be amenable to resolution in the opinion process, where we are unable to take evidence or find facts. *See generally* Attorney General Opinion DM-42 (1991) (questions as to constitutionality of geographical classifications as basis for exemption from continuing education requirement for real estate brokers can not be resolved in attorney general opinion process). Accordingly, it is our opinion here that only

the full development in a judicial adversarial proceeding of the evidence supporting the concerns of the state and affected parties would provide a basis for meaningful resolution of your questions. We thus decline to attempt to resolve your constitutional question here.

Your second, third, and fourth questions ask about particular procedures the department should follow in administering section 4A. Clearly, constitutional concerns such as those presented generally in your first question, also underlie these particular procedural issues you raise. It might be that in a given case, a court would read in, read out, or otherwise refashion particular provisions of section 4A in order to render its application there constitutional. For the reasons given above however, we do not feel we are able in the opinion process either to determine the constitutionality generally of section 4A or to refashion particular provisions so that they may be constitutionally applied in all specific situations.

Your second question, again, asks whether the department is required to provide opportunity for a hearing prior to determining whether to issue a "certificate of release" under section 4A(g), or more particularly, prior to determining the amount of security the owner or operator must submit in order to obtain said certificate, under section 4A(g)(3). If, so, you ask, would such hearing be held under the procedures set out in title 10, chapter 2001 of the Government Code, the Administrative Procedure Act ("APA")?[3] Section 4A does not specifically provide for hearings at these junctures but instead generally directs the department to adopt "the form, content, and procedures for issuance of a certificate of release." V.T.C.S. art. 6701h, § 4A(i).

We think it is clear that the department must afford opportunity for a hearing prior to a final setting of the security amount the owner or operator must deposit in order to obtain a certificate of release. *See, e.g., Wright v. Malloy*, 373 F. Supp. 1011 (D. Vt. 1974). *Wright*, in a very similar context, concluded that the setting of the amount of security needed to be deposited in order to avoid suspension of an operator's license after an accident where the operator had been unable to show proof of financial responsibility, would violate procedural due process requirements if the opportunity for a hearing were not afforded. Noting that the examiner in the motor vehicle department there had exercised some discretion in setting the amount, "based upon damage figures and descriptions of personal injury contained in police and motorist accident reports as well as . . . the damage figure claimed by a victim," and that only "the judgment rendered in such civil action as may follow an accident fixes the damages of the injured parties with exactitude," 373 F. Supp. at 1022, the *Wright* court nevertheless considered a hearing on

---

[3]We note that V.T.C.S. article 6252-13a, the Administrative Procedure and Texas Register Act, was repealed by the 73d Legislature. Acts 1993, 73d Leg., ch. 268, § 46. Article 6252-13a, is now codified in the Government Code at chapter 2001. *Id.* § 1. The codification of the Administrative Procedure Act in the Government Code is a nonsubstantive revision. *Id.* § 47.

the setting of security necessary in order to allow the driver to contest abuses of discretion, the use of improper data, etc. *See also Bell v. Burson*, 402 U.S. 535 (1971).

Where the owner or operator seeks a certificate of release based on submission of a release from persons damaged in the accident or of proof of financial responsibility, we believe the department must also offer opportunity for a hearing prior to a final determination that such submissions are insufficient, unless the matter at issue has already been resolved in an adjudicatory proceeding. Although the adequacy or inadequacy of such submissions may be clearer as a matter of law than the appropriateness of a departmental determination of the amount of security which must be deposited in order to obtain the certificate of release, discussed above, there may be submissions as to the adequacy of which reasonable minds might differ. *See* V.T.C.S. art. 6701h, §§ 1B (means of evidencing financial responsibility), 20 (non-residents' proof). Given the substantial property interests which could be at stake, we believe opportunity for a hearing should be afforded in this setting as well. However, if, for example, the magistrate before whom the owner or operator was initially brought under subsections (b) *et seq.* of section 4A determined, in a hearing affording due process, that the proof of financial responsibility offered there was inadequate, we see no reason why the department should have to afford opportunity for another hearing with respect to the adequacy of the same offered proof.

Also, we conclude that hearings on security amounts or the adequacy of releases or proofs of financial responsibility offered are subject to the provisions of APA relating to contested cases. *See id.* § 13; *see also* Gov't Code ch. 2003 (contested cases under APA to be conducted by State Office of Administrative Hearings unless originating agency employs own full-time hearings officers) (former 6252-13f, V.T.C.S.). APA governs all hearings on contested matters before agencies unless specifically provided otherwise. Again, the legislature has not specifically provided for such hearings in section 4A, but rather directed the department to itself adopt procedures for issuance of certificates of release. While the counterpart provisions of section 4A, in section 5, relating to licence and registration suspensions of Texas owners and operators, specifically provide for hearings in "police courts" and justice of the peace courts, we do not believe that the department under the general authority to adopt procedures in section 4A(i) could require for the section 4A hearings in question the use of such tribunals, which are operated by distinct political entities, without specific provision therefor by the legislature.

We have noted already that your third question--as to the minimum amount of security which must be posted under section 4A in order to obtain a certificate of release for an impounded vehicle--raises troubling issues, albeit with respect to the limited field of applications of the statute where the possible damages arising from the accident are found to be between $500 and $1000. While, under section 4A(a) through (e), if $500 in apparent damages were caused in an accident by an uninsured out-of-state vehicle, the owner or operator must be brought before a magistrate and the vehicle impounded, section 9 of the act clearly provides that for "security required under this Article . . . the Department may require . . . no . . . . less than One Thousand ($1,000) Dollars." Whether

the words "under this Article" refer to article 6701h as a whole or to article III of article 6701h "Security Following Accident," the security amounts the department is required to set under section 4A would be embraced therein.

As mentioned previously, the $1000 minimum security requirement under section 9 comports more obviously with the provisions of section 5, whereunder the department is to suspend the license and registrations of an uninsured person who has had an accident resulting in damage of $1000 or more, unless he deposits security. (Section 5 itself also states that the minimum security under that section is $1000.) It may be, however, that although we find nothing in the legislative history of the provisions indicating such, the legislature had a reason, connected with the "serious problem" of uninsured out-of-state motorists causing damage in accidents in Texas, for making the minimum security for obtaining release of an impounded vehicle under section 4A $1000 although the minimum damages which could lead to impoundment were only $500. As indicated above, with respect to the issue of constitutionality of section 4A generally, we think the issue of the constitutionality of the $1000 minimum security amount must await resolution in a judicial setting in which evidence of the respective competing interests may be taken and considered.

Your last question asks what "standards" the department should apply in determining the amount of security it will require: "For example, is a repair estimate enough or should actual testimony of some competent witness be require[d]? Could an affidavit be used to satisfy those standards?"

Section 4A directs that the security in question should be set at an amount "to secure the payment of any damages for which the operator may be liable." V.T.C.S. art. 6701h, § 4A(g)(3). Obviously, determination of such amounts with any exactitude may present difficulties in particular cases, for example, where serious personal injuries are involved. On the other hand, since section 9 of the act limits the amount of security which may be required to "the limits specified in Section 5 in reference to the acceptable limits of a policy," it is likely that the department will, in many cases of serious injury and/or extensive damage, simply set the security amount at such maximums. *See id.* § 5(c)6 (requiring coverage of at least $20,000 for personal injuries to one person, $40,000 for personal injuries to two or more, and $15,000 for property damage).

As to the use of "repair estimates" or "affidavits" in lieu of actual testimony, as bases for setting the amount of security, we note that APA itself provides with respect to hearings under that act that if a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form. Gov't Code § 2001.085 (former V.T.C.S. art. 6252-13a, § 14(a)). However, where as here, the matters to be offered in evidence as to amounts of damages caused in accidents will generally be open to dispute, we feel that the department should, in order to afford due process, offer opportunity for cross examination, and hence be prepared to put on oral testimony where a hearing is sought. *See, e.g., Richardson v. City of Pasadena,*

513 S.W.2d .1 (Tex. 1974) (right to cross examine witnesses applies in administrative hearings). As to the procedures generally the department should adopt under section 4A for setting security amounts, we believe that the department, in consultation with its legal staff and the attorneys in this office who represent the department, is better situated than we are in the opinion process to structure appropriate guidelines.

## S U M M A R Y

Section 4A of article 6701h, V.T.C.S., providing for impoundment of vehicles not registered in Texas where such vehicles are involved in accidents and proof of financial responsibility is not shown, is not on its face violative of constitutional commerce and equal protection provisions. The Department of Public Safety must afford opportunity for hearings under the Administrative Procedure Act, former V.T.C.S. article 6252-13a now codified at title 10, chapter 2001 of the Government Code, Acts 1993, 73d Leg., ch. 268, § 1, in setting security amounts required to be submitted in order to obtain the release of impounded vehicles. Article 6701h, V.T.C.S., on its face requires security of at least $1000 in such circumstances. Where a hearing on the amount of security to be required is sought, the department should be prepared to offer oral testimony in order to afford opportunity for cross-examination.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by William M. Walker
Assistant Attorney General