**KEYSTONE CABLE–VISION CORPORATION and James S. Williams, Plaintiffs,**

v.

**The FEDERAL COMMUNICATIONS COMMISSION and Ron Parver, Larry Bloom, William J. Tricarico, Stephen Ross, the City of Pittsburgh and City Council and Richard S. Caliguiri, Sophie Masloff, Paul Imhoff, Dante R. Pellegrini, Virginia Cook, Mead J. Mulvill, Jr., William McCray, Defendants.**

Civ. A. No. 78–946.

United States District Court, W. D. Pennsylvania.

Feb. 5, 1979.

David F. Weiner, Robert C. Gallo, Pittsburgh, Pa., for Keystone Cable-Vision Corp.

James S. Williams, pro se.

Marvin A. Fein, Asst. City Solicitor, Pittsburgh, Pa., John P. Greenspan, F. C. C., Washington, D. C., Peter F. Vaira, U. S. Atty., Pittsburgh, Pa., for defendants.

## MEMORANDUM

COHILL, District Judge.

In their attempts to secure authority to operate a cable television service in the City of Pittsburgh ("City"), plaintiffs have embarked on a voyage of litigation including a layover in this court.

The City's brief sets forth the convoluted history of this matter:

"Plaintiffs filed their first . . . action on October 20, 1976 in the Court of Common Pleas of Allegheny County (Docket No. G.D. 76–23612). In that action, plaintiffs sought injunctive and declaratory relief as well as damages against the City and its Director of Property and Supplies due to the City's failure to recognize it as Pittsburgh's cable television franchisee. By Order dated November 18, 1976, the Court dismissed the action on the grounds, *inter alia*, that all contracts with the City had to be in accordance with 53 P.S. 23301 which provides for advertisement, bids and approval of all contracts by ordinance. None of those requirements were alleged by plaintiffs in that action (Affidavit of Virginia I. Cook, Exs. A and B). The Court stated in its opinion 'that the Complaint is totally devoid of any merit.'

In a further attempt [to obtain permission to operate cable television], plaintiffs filed an application for an Electrical Permit with the City of Pittsburgh's Bureau of Building Inspection on May 11, 1977 (Affidavit of Virginia I. Cook, Ex. C). Permit Number 1657 was routinely issued by a clerk in the Bureau that same day on the basis of the signature of a registered electrician on the face of the application. (Affidavit of Virginia I. Cook, paragraph 3).

Thereupon, on June 20, 1977, plaintiffs filed a petition with the Federal Communications Commission ("FCC") pursuant to 47 C.F.R. 76.11 et seq. for the issuance of a Certificate of Compliance for the operation of a cable television system. They based the requisite local operating authorization on Electrical Permit Number 1657 (Affidavit of Virginia I. Cook, Ex. D).

Upon notification of the proceeding before the FCC and review of the permit application, Permit Number 1657 was revoked by the City of Pittsburgh (Affidavit of Virginia I. Cook, Ex. E). Plaintiffs did not file a timely appeal from that revocation. (Affidavit of Virginia I. Cook, paragraph 5).

By Memorandum Opinion and Order adopted December 21, 1977 and released January 11, 1978, the FCC denied the request for a Certificate of Compliance for failure to obtain valid local authorization ([Brief of] FCC, Ex. C).

On February 2, 1978, plaintiffs once again filed an application for an electrical permit with the City of Pittsburgh and Electrical Permit Number 4586 was routinely issued by a clerk in the office of the Bureau of Building Inspection upon receipt of the application with the signature of a registered electrician thereon. (Affidavit of Virginia I. Cook, Exs. F and G). Upon subsequent review of representations made in the application on February 2, 1978 by the Superintendent of Building Inspection, Paul J. Imhoff, the permit was revoked. (Affidavit of Virginia I. Cook, Ex. H).

On February 9, 1978, plaintiffs filed a Petition for Reconsideration of its Certificate of Compliance with the FCC on the basis of revoked Electrical Permit Number 4586. (Affidavit of Virginia I. Cook, Ex. I). That petition was denied by the FCC by Memorandum Opinion and Order adopted July 27, 1978 and released August 9, 1978. (Affidavit of Virginia I. Cook, Ex. J).

On February 13, 1978 plaintiffs filed a Notice of Appeal from the revocation of Electrical Permits Numbers 1657 and 4586 with the Court of Common Pleas of Allegheny County at Docket No. S.A. 375 of 1978. The City of Pittsburgh filed a Motion To Quash that appeal and the case is still pending. (Affidavit of Virginia I. Cook, Exs. K and L; paragraph 9).

On August 20, 1978, the City of Pittsburgh adopted Ordinance No. 20 of 1978 which provides for the grant of cable television franchises and regulation thereof in the City of Pittsburgh. That ordinance was enacted after over two years of public hearings and extensive public comment from prospective franchises and other persons interested in the regulation of this highly specialized and technical area. At present no cable television franchises have been granted by the City of Pittsburgh (Affidavit of Virginia I. Cook, Ex. M; paragraphs 10 through 20.

On August 28, 1978, plaintiffs filed a [*pro se*] Complaint with this Court in an obvious attempt to circumvent the requirements of the City of Pittsburgh's cable television ordinance. In their Complaint, plaintiffs apparently alleged that the City defendants and the federal defendants [FCC and its employees] have conspired to deny them a right to operate a cable television system in Pittsburgh and that in the course of their conduct have denied plaintiffs their rights under the First, Fifth and Fourteenth Amendments to the United States Constitution and have violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2005 [sic]. Plaintiffs are requesting this Court to grant them an instrument of authorization for a broadcasting service in the City of Pittsburgh.

Defendants [City and its employees] filed a Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, alleging failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. The City defendants have also requested costs and reasonable counsel fees."

The federal defendants also filed a Motion to Dismiss, or in the alternative, for

Summary Judgment. Because plaintiffs agree that the portion of the complaint requesting the FCC to issue certificates of compliance is moot since the FCC no longer requires such certificates, we will grant the federal defendants' motion to dismiss, and we proceed to consider only the City's motion.

At the outset, although the complaint does not specify proper jurisdictional grounds, we will construe the complaint as alleging a cause of action under 42 U.S.C. § 1983 and jurisdiction under 28 U.S.C. § 1343(3), because at oral argument plaintiffs' counsel advised the court that this action against the City in essence was brought to remedy the City's revocation of the electrical permits, which plaintiffs contend constituted a "property interest," without due process of law. *See, e.g., Earnhart v. Heath*, 369 F.Supp. 259, 260–61 (E.D. Ark.1974).

"Standing alone, an action for damages for the taking of personal property or for the recovery of personal property does not lie under Section 1983." *Cisneros v. Cavell*, 437 F.2d 1202, 1203 (3d Cir. 1971) (per curiam). To state a claim upon which relief can be granted in a § 1983 action based on a due process violation, plaintiffs herein must allege, *inter alia*, that they were deprived of "property" or "liberty" interests, "which themselves have been deemed to depend on the existence of an independently-grounded right." *McKnight v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 583 F.2d 1229, 1234–35 (3d Cir. 1978). According to the Third Circuit:

"As the Supreme Court has written with regard to 'property' interests in general, to have such an interest one must have 'more than a unilateral expectation' or 'an abstract need or desire' for it. Rather, one must have 'a legitimate claim of entitlement to it.' Such claims are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'

*Board of Regents v. Roth*, 408 U.S. [564, 92 S.Ct. 2701 at 2709, 33 L.Ed.2d 548] at 577 (emphasis added); see also *Bishop v. Wood*, 426 U.S. [341, 96 S.Ct. 2074, 42 L.Ed.2d 684] at 344 & n. 7."

*McKnight v. SEPTA, supra*, at 1239–40. *See also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

In this case, any property right plaintiffs possessed stemmed from the electrical permits, which were granted under authority of the Building Code of the City of Pittsubrgh ("Code"), Ordinance No. 300 (1947), as amended by subsequent ordinances. § 214(b) of the Code requires that a permit be issued by the Bureau of Building Inspection ("Bureau") before any person begins [i]nstallation, alteration or repair of electrical wiring, fixtures, equipment, apparatus, devices or appurtenances." We are dealing with, therefore, the right to physically install electrical devices, not to operate a cable television system, which may be subject to regulation in other ways.

§ 217 of the Code, governing the issuance of the permit, obligates the Superintendent of the Bureau to check the permit application, drawings and specifications to determine whether they comply with the Code and all other applicable laws or ordinances. § 215 requires the Superintendent to refuse to issue permits if the application indicates that the work to be done is not in accordance with provisions of laws and ordinances.

§ 221 of the Code specifies that the issuance of a permit shall not prevent the Superintendent from prohibiting building operations being carried on in violation of the Code or other law or ordinance. "The issuance of a permit . . . shall not be construed to be a permit for or an approval of any violation of the provisions of this Code. No permit presuming to give authority to violate or cancel the provisions of this Code shall be valid." Code § 221.

§ 223 of the Code, dealing with suspension or revocation of a permit, obligates the Superintendent to give notice where work being done is not in conformity with the

permit issued for such work and to revoke the permit where the notice is not complied with. "In cases which, in the judgment of the Superintendent, require immediate action, the permit may be revoked verbally and confirmed in writing without serving the notice. . . ." Code § 223.

From these provisions of the Code and § 201 (general provisions), we doubt that, under the test stated in *Craft* and *McKnight*, plaintiffs had a property interest in any right to installing electrical equipment. First, the installation of equipment in which plaintiffs assert a property interest is not authorized under the Code. *See* Code §§ 201, 214(b); Exhibits E and H to Affidavit of Virginia I. Cook. Second, the Superintendent's authority under § 221 to prohibit building operations in violation of the Code, despite the issuance of a permit, suggests that plaintiffs had only a "unilateral expectation" that they had the unqualified right to proceed with the installation of the equipment they listed on their application. In this regard, we note that the Code lacks any provision to the effect that the permit shall remain in force unless certain contingencies occur, which is a silence we construe as an intent to confer a mere license on a permit holder. *Cf. Memphis Light, Gas & Water Div. v. Craft, supra,* 436 U.S. at 11, 98 S.Ct. 1554.

Assuming, *arguendo,* that the electrical permits did confer a property right on plaintiffs, we conclude that the Code and Pennsylvania statutes provide the process due a permit grantee under the Fourteenth Amendment. The Third Circuit has said:

"Due process requires, essentially, only a full and fair hearing before an impartial tribunal 'at a meaningful time and in a meaningful manner.' A hearing which comports with due process must ordinarily be accorded before a party can be 'condemned to suffer grievous loss.' The hearing, however, need not be in federal court. Thus a party is not deprived of due process who, having no federal cause of action, is relegated to the state courts for redress. Nor is a party deprived of

due process merely because it must seek administrative resolution of its claims before it has access to the courts. . . ." *West Penn Power Company v. Train,* 522 F.2d 302, 312–13 (3d Cir. 1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976). (citations and footnotes omitted.) In *Craft,* the court recognized that situations may arise where "the potential length or severity of the deprivation does not indicate a likelihood of serious loss" and where the decisionmaking procedures are "sufficiently reliable" not to require " 'advance procedural safeguards.' " 436 U.S. at 19, 98 S.Ct. at 1565 *citing Ingraham v. Wright,* 430 U.S. 651, 680, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

Similarly, here, in balancing the right to install electrical equipment with the City's interest in the safety of its residents we think that the available post-revocation hearing procedures are sufficient for purposes of the due process clause. A person whose permit has been revoked has a right of appeal first to the Board of Standards and Appeals, *see* Code §§ 304(a) and (b), 305(d); then to the Court of Common Pleas of Allegheny County, Pennsylvania, *see* 53 P.S. § 11301 *et seq.*; then to the Pennsylvania Commonwealth Court, *see* 17 P.S. § 211.402(5). After these appeals as of right, the Supreme Court of Pennsylvania may agree to review the matter, *see* 17 P.S. § 211.204. We think that these procedures give a person whose permit has been revoked a "full and fair hearing before an impartial tribunal 'at a meaningful time and in a meaningful manner.' " We see no substantial reason why the hearings should be held before the revocation, in light of the City's important interest in the safety of its residents. Thus, even assuming plaintiffs had a property right conferred by the electrical permits, Pennsylvania law provides the plaintiffs due process of law for the revocation of the permit. *Memphis Light, Gas & Water Div. v. Craft, supra; McKnight v. SEPTA, supra.*

Plaintiffs' other claims are frivolous and require no discussion.

Because plaintiffs have failed to state a claim for due process deprivation, we will grant the City's motion to dismiss, which, since we have accepted and considered an affidavit, we treat as a motion for summary judgment. Fed.R.Civ.P. 12(c).

An appropriate order will be entered.